**Edward SMITH, Jr.,**
**Petitioner–Appellant,**

v.

**Steve W. PUCKETT, Superintendent of**
**Mississippi State Penitentiary, etc.,**
**Respondent–Appellee.**

No. 89–4830
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 7, 1990.

Edward Smith, Jr., Parchman, Miss., pro se.

Jeffrey N. Rosamond, Sp. Asst. Atty. Gen., Jackson, Miss., for respondent-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Edward Smith, Jr. (Smith) appeals the denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

### Facts and Proceedings Below

Smith is currently a prisoner in the Mississippi State Penitentiary serving a life sentence for murder. A jury found Smith guilty of fatally shooting James Jackson (Jackson) in 1981 as Jackson lay in a hospital intensive care unit suffering from gunshot wounds he had previously received. The Supreme Court of Mississippi affirmed the conviction. *Smith v. State*, 430 So.2d 406 (Miss.1983).

After exhausting state remedies, Smith filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The magistrate recommended dismissal of the habeas petition, and the district court adopted the recommendation. The court granted Smith a certificate of probable cause to appeal. The case is now before us.

### Discussion

Smith first argues on appeal that the state deprived him of counsel at a critical stage in the prosecution by taking a still photograph of him after his indictment and four days before his trial without the presence of his counsel. Smith was photographed alone, not in a "line-up," and none of the witnesses who testified at trial was present when the photograph was taken. There is no indication or claim that Smith said anything, or communicated in any other way, on the occasion when the picture was taken, or that the pose depicted in the photograph was in any way unusual or different from the typical "mug shot." Nor was there any evidence or claim of anything said to Smith, or done to or by

him, on that occasion. The photograph was not introduced in evidence. There is no claim nor any indication that Smith's appearance as depicted therein differed from his appearance at trial.

■ The Sixth Amendment right to have counsel present at a pretrial confrontation is determined by "whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967). Contrary to Smith's position, the right to counsel at all stages of the proceedings is not absolute. Preparatory stages, "such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like," are not "critical stages at which the accused has the right to the presence of his counsel." *Id.* We hold that the photographing of Smith was such a preparatory stage; as a result, Smith was not entitled to have counsel present when his picture was taken. *See United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) (post-indictment photographic display); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 1953–54, 18 L.Ed.2d 1178 (1967) (handwriting exemplar).

■ Smith next contends that the state violated his due process rights by showing the mentioned photograph to prosecution witnesses shortly before they appeared in court and gave their trial identification testimony. He maintains that he was prejudiced by this "unnecessarily suggestive" use of the photograph. The state responds that even if showing the photograph to witnesses was improper, there is no due process violation because the reliability of the witnesses' identification remains untainted.

The Supreme Court has asserted "that reliability is the linchpin in determining the admissibility of identification testimony" and has outlined five factors to be considered in determining the reliability of the identification evidence:

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

In the instant case, three nurses working in the intensive care unit of the hospital identified Smith at trial. At the time of the shooting, Teresa Martin (Martin) was drawing blood from the victim, James Jackson. She identified Smith as the man who had approached her from the left brandishing a gun. Martin related at trial that Smith said "You son of a bitch" to Jackson before shooting at his face and chest several times. Martin also testified that the unit was very well lit with fluorescent light bulbs and that she had had a clear look at the gunman. She had previously identified Smith as the gunman in a lineup, although she noticed that at the time of the lineup and trial Smith had shed the beard and mustache he had worn at the time of the shooting.[1]

A second nurse, Scott Berry (Berry), was attending a surgery patient two beds down from Jackson during the shooting. Berry testified that he saw a black male enter the intensive care unit, raise a pistol, motion Martin out of the way, speak the words "You son of a bitch," and then shoot Jackson. Berry identified Smith as the gunman, although Berry too noticed that Smith had shaved the mustache and beard he had worn at the time of the shooting. On the day of the trial, Berry identified Smith as the gunman from a photo display of five photographs of black males.[2]

---

1. Smith does not challenge the propriety of this lineup.

2. Smith also does not challenge the propriety of this photo display, apart from the mere fact that

it included the above-noted challenged photograph. Berry and Knott testified that officers presented them with an envelope containing five photographs of black males, and asked them to pick the photograph of the perpetrator.

Another nurse, Thelma Knott (Knott), was bathing a patient in the unit at the time of the shooting. Because a curtain was partially drawn around her patient, Knott was unable to see Jackson's bed. However, Knott testified that she got a clear look at Smith as he passed by her. As Smith passed, Knott commented to her co-worker that she knew Smith and speculated whether he was visiting Jackson. Knott testified that she had been raised in the same neighborhood as Smith and had known him in school. She also testified that at the time of the shooting she saw a second man near the entrance of the unit waving a gun and ordering everyone to the ground. On the night of the shooting, Knott identified Smith from his picture at the police station. On the day of the trial, Knott again identified Smith as the gunman from a photgraphic display.[3]

At trial, Smith's counsel in cross examination, and subsequently by stipulation, brought out the fact that the prosecution had shown to Martin, Berry, and Knott, shortly before they testified, the challenged photograph of Smith taken four days before trial. Smith's counsel moved to strike those witnesses' testimony on that basis, but the trial court overruled the motion, apparently agreeing with the prosecution that the in-court identifications were not tainted.

Nothing Smith has presented supports his allegation that the display of his photograph shortly before the trial was unduly suggestive. In any event, even if the display were improper, under *Manson, supra,* the identification does not taint the reliability of the witnesses' in-court identification or other, earlier photo display and lineup identifications. All of the witnesses had a clear view of Smith on the day of the murder. Their descriptions of Smith were consistent, and they identified him with certainty shortly after the incident. Smith's due process rights were not violated by showing the photograph in question to the witnesses before they appeared in court.

Smith next contends that he was denied effective assistance of counsel because: 1) counsel did not file a motion for a change of venue based on allegedly extensive and prejudicial pretrial publicity; 2) counsel was "inadequate and ineffective when he did not object in court to the separation and dispersal of the jury after its selection and before its final discharge"; 3) counsel filed an appellate brief without citations in contravention of Rule 6 of the Mississippi Supreme Court; and 4) counsel was unprepared when he allowed an in-court identification by witnesses who had seen a recent photograph of the defendant prior to entering the court room.

To support his claim, Smith must prove that his counsel made errors so serious that they deprived him of his Sixth Amendment rights and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The proper standard for attorney performance is an objective standard of reasonableness under prevailing professional norms.

Reasoning that Smith failed to show specific incidents of actual prejudice resulting from counsel's performance, the district court determined that Smith's claim of ineffective assistance was meritless. In considering such a claim, a court need not examine the first prong of the test if the defendant makes an insufficient showing of the other. *Strickland,* 104 S.Ct. at 2069. To show prejudice, Smith "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068.

Smith's first complaint, that counsel did not move for a change of venue, merely summarily states that he was deprived of an impartial jury due to community prejudice and pretrial publicity. Smith fails to allege any specifics or facts tending to indicate that the jury was biased or that community feeling influenced the trial or was so great that it must be presumed to have done so. Indeed, Smith alleges noth-

---

**3.** This is the same display mentioned in note 2, and the same comments apply.

ing concrete or specific at all in respect to local sentiment or publicity. It is not enough to show that the publicity—as to which no specifics are alleged—could have conceivably affected the jurors. *See Strickland*, 104 S.Ct. at 2067. Nothing in the record of trial even hints at any publicity or community feeling. Smith's brief, wholly general and conclusory assertion in this respect, clearly does not suffice to present a viable basis for relief.

■ Smith next complained that, in light of the alleged pretrial publicity, he was prejudiced because counsel did not object to the separation and dispersal of the jury. The court carefully instructed members of the jury to refrain from discussing the case, reading newspapers, or listening to any news reports of the trial. Smith's wholly conclusory allegation fails to assert anything tending to show potential prejudice in this regard.[4]

Smith also notes that his counsel failed to follow Mississippi Supreme Court rules by not citing authorities in Smith's brief in support of his arguments. He has not pointed to any specific omissions of his attorney in this regard. *See Knighton v. Maggio*, 740 F.2d 1344, 1349 (5th Cir.), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984). Even taking Smith's contention as true, there is no indication that he was in any way likely prejudiced by his attorney's action,[5] and therefore he may not prevail on this claim.

■ Smith next argues that counsel lacked knowledge of the law that would have prevented the in-court identification testimony from occurring. He also asserts that counsel failed to effectively argue the issue on appeal. Smith has not shown, however, that he was prejudiced by the witnesses' having been shown his photograph, or that there was any valid basis on which to exclude their testimony. From the witnesses' testimony, there was no evidence that the complained-of identification procedure was suggestive. Moreover, as discussed, *supra*, the record is replete with reliable identification testimony by these three witnesses. The matter was brought to the trial judge's attention.[6] Smith has failed to indicate any reasonable probability that the outcome would have been different, absent his attorney's alleged shortcomings. Thus he may not prevail on this claim. *Strickland*, 104 S.Ct. at 2068.

In light of all the circumstances, the district court did not err in finding that counsel acted reasonably. And, Smith failed to allege anything tending to show prejudice to support an ineffective assistance of counsel claim.

### Conclusion

For the foregoing reasons, the judgment of the district court denying Smith's petition for writ of habeas corpus is

AFFIRMED.

---

4. Smith also states that the failure to sequester the jury violated his Sixth and Fourteenth Amendment rights. However, these wholly general, conclusory allegations are likewise insufficient for essentially the same reasons. *See Carter v. Lynaugh*, 826 F.2d 408, 409 (5th Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 277 (1988).

5. We see no likelihood whatever that Smith's conviction would have been reversed had any omitted citations been included; there simply appears to be no basis for reversal.

6. Although his attorney did not cite the Sixth Amendment, we have held that Smith's claim in this respect is without merit. Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.