**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dwight Ernest DOUGALL, Defendant–Appellant.**

**No. 90–8242.**

United States Court of Appeals, Fifth Circuit.

Dec. 7, 1990.

Michael S. McDonald, Asst. Federal Public Defender and Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for defendant-appellant.

Mark R. Stelmach, LeRoy Morgan Jahn, Asst. U.S. Attys., and Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GEE, and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

We are asked to hold that hair samples voluntarily provided and a confession voluntarily given must both be suppressed because in the course of obtaining them investigating agents asked routine booking questions and requested the samples after

the defendant had invoked the fifth amendment and requested counsel and because, after the defendant reinitiated the conversation and reinvoked his rights, investigating agents remained in the room silently a brief time, after which the defendant again spoke and later confessed. We decline to do so, affirming the district court's findings as to all matters.

Two men raped a Mexican American woman in an unoccupied apartment located on a military reservation. The woman described the heights, builds, approximate ages, complexions, facial characteristics, and dress of her two attackers in detail to FBI and Army CID agents. The description of the shorter of the two attackers almost exactly matched the defendant, Dougall. Additional information linked Dougall to the scene of the rape and to the rape: while investigating a previous incident in the same unoccupied apartment, CID agents uncovered Dougall's identification card in the apartment; the tenant officially assigned to the apartment indicated Dougall and Vance Anderson used the apartment for "partying;" and Anderson, cooperating with the investigation, informed the CID agents that on the day of the rape Dougall offered to let Anderson have sex with a Mexican American woman Dougall had at the apartment. The CID agents consequently issued a look-out for Dougall, listing him as armed and dangerous.

The arresting military police officer, alone when he stopped Dougall's car, arrested the other two occupants of the car as well, apparently to ensure his own safety. The two occupants were not questioned with respect to the rape. Although agents did question more than one suspect, Dougall was the only suspect matching the description of the *shorter* attacker.

Before questioning him, the agents read Dougall his rights; and he signed a waiver. After he requested an attorney, the agents requested minimal personal data from Dougall—name, social security number, birth date, birth place, height, weight, and address. As well, they requested a hair sample, informing Dougall that they would obtain a court order if he failed to comply voluntarily: Dougall agreed to permit the agents to take a hair sample at the V.A. Hospital. Dougall then began to talk about the charges and signed a second waiver. When he again requested an attorney and fell silent, the officers sat in the room in silence for a short time. Dougall resumed talking and confessed.

Dougall moved to suppress the hair samples and his confession. Finding probable cause for the arrest and no improper interrogation tactics, the district court denied the motion. Dougall appeals both findings, and we address each in turn.

## Probable Cause

■ Despite the victim's detailed description and the physical and testimonial evidence linking Dougall to the scene of the rape and to the rape, Dougall insists there was no probable cause for his arrest. We disagree. Finding that the CID and FBI agents who issued the "Look–Out" for Dougall had probable cause at the time, the district court engaged in the proper inquiry. *See Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Webster*, 750 F.2d 307, 323 (5th Cir.1984) *cert. denied*, 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985) (probable cause can rest on the collective knowledge of the law enforcement agents investigating the case, rather than solely on the knowledge of the officer actually effecting the arrest). All of the facts and circumstances, together with the reasonable inferences that may be drawn, warranted a belief that Dougall participated in the offense under investigation. While more than one questioned suspect matched the taller attacker's description, Dougall was the *only* suspect matching that of the shorter. Contrary to Dougall's conclusory contention, there is no indication that the agents "swept" the area for suspects to interrogate into confessing.

## No Improper Interrogatories

■ If a suspect in custody requests an attorney during his interrogation, all questioning must cease until he is given

the opportunity to consult with counsel. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). A confession obtained through interrogation of a suspect after he has requested an attorney must be suppressed as evidence unless the suspect himself has voluntarily initiated further communication leading to it. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). Here, the district court credited the testimony of the interrogating agents that, on both occasions after invoking his rights, Dougall voluntarily reinitiated communications and agreed to answer additional questions without having counsel present. The district judge observed the witnesses, and his credibility assessment warrants due respect.

The court also stated that the conduct of the agents did not violate *Miranda* or *Edwards*. Dougall raises three issues as to the agent's conduct: (1) the agents continued asking questions, albeit to fill out a personal information form, *before* any reinitiation of communications by Dougall; (2) the agents requested a hair sample and threatened to obtain a court order *before* any such reinitiation, and; (3) the agents remained in the room *after* Dougall invoked his rights for the second time. We conclude that none of these actions constituted improper interrogation.

■ First, interrogation includes *words or actions* that the authorities should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). Previously, we have held the sort of biographical questions—name, birth information, address, height, weight—asked here are part of the booking routine, not intended to elicit damaging statements, and thus not interrogation for fifth amendment purposes. *United States v. Menichino*, 497 F.2d 935, 941 (5th Cir.1974).[1] This case presents no reason to depart from that rule, as the questioning immediately following Dougall's invocation of his rights lasted only six minutes, was strictly limited, and elicited no damaging statements. Dougall's confession came after he had reinitiated discussions and signed a second waiver.

■ Second, requesting hair samples did not violate Dougall's fifth amendment right against self-incrimination or his sixth amendment right to counsel. Hair samples, like handwriting samples and photographs, are real and physical evidence, non-testimonial in nature; and compulsion to submit the samples would not violate Dougall's right against self-incrimination. *See Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989); *Schmerber v. California*, 384 U.S. 757, 760–64, 86 S.Ct. 1826, 1830–32, 16 L.Ed.2d 908 (1966). Further, the right to counsel attaches at critical stages of the criminal proceedings; and the request did not occur at a critical stage of the proceeding. *Id.* (photographs taken after arrest).[2]

---

1. Dougall raises a D.C. Circuit case, *United States v. Hinckley*, 672 F.2d 115 (1982) holding that 25 minutes of FBI questioning that included information going to Hinkley's mental state (mental state was likely to be an issue in the case) under the circumstances of that case did not constitute routine booking. Here, the background questioning lasted only six minutes and yielded no potentially or actually incriminating information. Moreover, the D.C. Circuit follows a different rule from that of our circuit. We addressed the D.C. Rule in *Menichino*, distinguishing *Proctor v. United States*, 404 F.2d 819 (D.C.Cir.1968), a case that considered as impermissible a question merely "lending" itself to eliciting damaging statements. First, in *Menichino*, as well as our case here, the questions did not lend themselves to eliciting damaging statements; and second, in *Menichino* and in our case, the responses to the routine questions were not incriminating. *Menichino* left open the case in which the damaging statement is made in response to the booking question.

In *United States v. Webb*, 755 F.2d 382 (5th Cir.1985) we came close to addressing this issue. There, a jail detention officer, trying to decide where to locate a defendant who just attempted suicide, asked the defendant what "kind of shit he got himself into" and the defendant responded with a confession of murder. Not surprisingly, the question, though asked in a custodial capacity, was considered non-custodial and incriminating.

2. *See also Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967) (the taking of a writing sample did not occur at a critical stage); *United States v. Terry*, 702 F.2d 299 (2nd Cir.1983) (no right to counsel when palm print taken); *Payne v. Thompson*, 622 F.2d

Dougall asserts that the verbal request for the hair sample and the threat to pursue a court order, as opposed to the actual taking of the hair sample, violated his rights. While it might have been more prudent to request the hair sample after Dougall's attorney had arrived to avoid incidentally pressuring Dougall, there is no evidence that the agents designed the request to elicit damaging statements. The request itself did not draw a damaging response, other than submission of the hair samples at a non-critical stage of the case. Accordingly, the district court did not err in refusing to suppress the hair samples that could otherwise have been compelled.

■ Third, the agents remained in the interrogation room after Dougall reinvoked his fifth and sixth amendment rights. The agents sat quietly. Such minor momentary inaction is not akin to the clearly impermissible "Christian burial speech" held to violate the fifth and sixth amendments in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), because of the improper psychological pressure placed upon the suspect. After Dougall reinitiated the conversation, the agents endeavored to ensure Dougall's comfort, at times ceasing their questioning to permit Dougall to smoke or drink. He was not hand-cuffed. He concedes that he did not feel threatened by the officers. The one particular silent moment which Dougall singles out from the ongoing accommodation accorded him by the agents and labels as an improper "tactic" designed to make him speak hardly is any more a tactic than the other silent moments that Dougall found more to his liking, and certainly no more coercive.[3]

None of the actions of which Dougall now complains amounts to improper interrogation. Therefore, the admission of the

hair samples and of his confession was proper.

AFFIRMED.

---

254 (6th Cir.) *cert. denied,* 449 U.S. 1063, 101 S.Ct. 788, 66 L.Ed.2d 607 (1980) (hair and semen samples).

**3.** This is so even though one agent described the silence as a "tactic" and stated that the agents stayed and remained quiet to "[s]ee if [Dougall] would admit—you know, respond to the question [as to whether Dougall had sex with the

victim]." Dougall eventually answered no to the question.

Where other silences have occurred during the interrogation, waiting a *short* moment, quietly, without staring, to ensure that the defendant has finished saying what he wishes to say accommodates the defendant's comfort more than threatening to leave him alone.