Ricky BLANKENSHIP, Petitioner–
Appellant,

v.

Gary L. JOHNSON, Director, Texas De-
partment of Criminal Justice, Institu-
tional Division, Respondent–Appellee.

No. 95–40638.

United States Court of Appeals,
Fifth Circuit.

Feb. 20, 1997.

Ricky Blankenship, New Boston, TX, pro se.

Janine R. Balacki, Office of the Attorney General for the State of Texas, Austin, TX, for respondent-appellee.

Before WISDOM, SMITH and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ricky Blankenship appeals the denial of his petition for writ of habeas corpus. Concluding that a recently-enacted statute, 28 U.S.C. § 2254(d)(1), bars relief, we affirm.

### I.

In 1988, Blankenship was convicted of aggravated robbery, sentenced to ten years in prison, and released pending appeal. On direct appeal, his court-appointed attorney, Michael Lantrip, successfully argued that the indictment was fatally deficient because it listed Blankenship's victim as "Armando" when the actual victim was Armando's brother, Rudolfo. The court of appeals reversed and ordered an acquittal. *See Blankenship v. Texas,* 764 S.W.2d 22 (Tex.App.—Texarkana 1989).

Unbeknownst to Blankenship, Lantrip had been elected county attorney shortly after he argued Blankenship's appeal. Lantrip did not inform his client of this fact or withdraw from the case.

In January 1989, the local district attorney and the state prosecuting attorney filed petitions with the Texas Court of Criminal Appeals seeking discretionary review of the reversal. These petitions were served on Lantrip, who still was Blankenship's attorney of record but did not inform his client of these petitions or take any action on them.

In June 1989, the Court of Criminal Appeals granted the petitions for discretionary review. Again, Lantrip did not inform his client of this event, file any brief on his behalf, appear, or take any action whatsoever. In March 1990, the Court of Criminal Appeals reversed the court of appeals, thereby reinstating the conviction, because "there was evidence that Rudolfo was known as Armando." *Blankenship v. Texas,* 785 S.W.2d 158, 160 (Tex.Crim.App.1990).

Blankenship had no knowledge of these events. It came as a considerable shock to him when, some fifteen months after the reversal of his conviction by the intermediate court, the police arrived to arrest him in April 1990.

Blankenship wrote a number of letters to Lantrip but received no response. Finally, in November 1991, Lantrip answered Blankenship: "I have not withdrawn. I was elected County Attorney and by law I cannot represent a defendant in a criminal matter and also be a prosecutor for the State of Texas."

 Blankenship filed a state habeas petition, which was denied on June 24, 1994.[1] He then filed the instant federal habeas peti-

---

1. For the first time on appeal, Blankenship argues that he is entitled to relief on the ground of double jeopardy. As he failed to present this issue to the state courts as required by 28 U.S.C. § 2254(b)–(c), we may not review this claim. *See Bufalino v. Reno,* 613 F.2d 568 (5th Cir.1980).

tion, alleging that he was denied effective assistance of counsel before the Court of Criminal Appeals because of Lantrip's total inactivity and conflict of interest. The district court denied the petition, and we granted Blankenship's motion for a certificate of probable cause ("CPC") to appeal.[2]

## II.

### A.

■ A claim of ineffective assistance must be predicated upon an underlying right to the assistance of counsel. *See Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982) (per curiam) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel...."). Thus, we must decide whether Blankenship had a right to counsel during the *state-requested* discretionary review. This is a matter of first impression.

### B.

■ The standards of review set forth in § 104(3) of the AEDPA apply to all pending habeas corpus petitions. *See Drinkard v. Johnson,* 97 F.3d 751, 764–66 (5th Cir.1996), *petition for cert. filed* (U.S. Jan. 6, 1997) (No. 96–7359). The newly-enacted statute, to be codified at 28 U.S.C. § 2254(d)(1), states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Feder-

al law, as determined by the Supreme Court of the United States....

Thus, initially we must determine whether a state court has adjudicated Blankenship's claim on the merits.

■ Blankenship first raised his claim to a right to assistance on discretionary review at his state habeas proceeding before the Court of Criminal Appeals,[3] which denied the habeas petition without a written order. When faced with a silent or ambiguous state habeas decision, we "look through" to the last clear state decision. *See Ylst v. Nunnemaker,* 501 U.S. 797, 806, 111 S.Ct. 2590, 2596, 115 L.Ed.2d 706 (1991). Where, as here, there is no clear state decision, we determine, on a case-by-case basis, whether the adjudication was "on the merits." *See Preston v. Maggio,* 705 F.2d 113, 116 (5th Cir.1983).

■ In making this determination, we consider the following factors: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination of the merits. *See id.* The first and third factors are not helpful here, as we know of no other case in which a defendant has claimed a right to assistance of counsel on state-requested discretionary review, and the state court decision in the instant case is totally silent.

The second factor guides us. The state did not file a brief in opposition to Blankenship's state habeas petition and thus did not plead any procedural ground for denying relief. *See Ortega v. McCotter,* 808 F.2d 406, 408 (5th Cir.1987) (assuming that the state court adjudicated the claim on the merits

**2.** The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), amended 28 U.S.C. § 2253 to require a "certificate of appealability" ("COA") before a final order in a habeas proceeding can be appealed. The standard for issuing a COA is the same as that for issuing a CPC. *See Lennox v. Evans,* 87 F.3d 431, 434 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 746, 136 L.Ed.2d 684 (1997). We granted Blankenship a CPC prior to April 24, 1996, the effective date of the

new act. There is no need for a COA here, to enable our appellate review, for "the COA requirement of the AEDPA will not apply to habeas appellants who have *already obtained* CPCs." *Brown v. Cain,* 104 F.3d 744, 749 (5th Cir.1997).

**3.** In Texas, all post-conviction habeas petitions are decided by the Court of Criminal Appeals. *See* Tex.Code Crim.Proc.Ann. art. 11.07, § 3(a) (Vernon Supp.1996).

where the state did not raise any procedural ground for denying relief).

█ The state similarly has not pleaded any procedural ground for denying Blankenship's *federal* habeas petition, and we are unaware of any procedural ground barring relief. In short, the Court of Criminal Appeals apparently was unaware of any procedural ground for denying Blankenship's petition. Under these circumstances, we are confident that the Court of Criminal Appeals adjudicated Blankenship's claim "on the merits," as required by the AEDPA.

### C.

Accordingly, by the very words of § 2254(d)(1), we must deny Blankenship relief unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States...."[4] The Supreme Court never has decided whether a criminal defendant has a right to assistance of counsel on state-requested discretionary review. Therefore, we might easily say that the right was not "clearly established."

█ The issue is whether the decision of the state court was reasonable at the time. "[A] reasonable, good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal, even if federal courts later reject that view of the applicable precedent." *Mata v. Johnson,* 99 F.3d 1261, 1268 (5th Cir.1996), *vacated in part on other grounds,* 105 F.3d 209 (5th Cir.1997).

█ The controlling case on this issue is *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). In *Moffitt,* the petitioner was represented by counsel in the state court of appeals but was denied appointed counsel to pursue discretionary review in the state supreme court. The United States Supreme Court held that Moffitt was not entitled to appointed counsel to pursue further review.

There is considerable language in *Moffitt* from which a reasonable jurist could conclude that Blankenship was not constitutionally entitled to counsel on discretionary review. In *Moffitt,* the Court denied relief in part because Moffitt, like Blankenship, had "received the benefit of counsel in examining the record of his trial and in preparing an appellate brief," so "his claims had 'once been presented by a lawyer and passed upon by an appellate court.'" "These materials," the Court added, "provide the [state] Supreme Court ... with an adequate basis for its decision to grant or deny review." 417 U.S. at 614–15, 94 S.Ct. at 2446.

In other words, Blankenship, like Moffitt, had one full appeal in which he was represented by competent counsel. The *Moffitt* opinion can reasonably be read to say that that is all he is entitled to, regardless of which side is seeking the discretionary review.

Again, the only question is whether what happened in the state courts was "contrary to clearly established law." Given the above-quoted language from *Moffitt,* one cannot reasonably conclude that the state court decision was directly contrary to *Moffitt,* and certainly not that what Blankenship argues for now was "clearly established."

For one thing, we squarely reject the notion that, merely because the Supreme Court has not articulated a holding contrary to the one urged by a habeas petitioner, the Court, by its silence, took the opposite view. That is to say, we will not infer, from the absence of a Supreme Court holding granting counsel to a defendant in a state-initiated discretionary review, that in fact the Court intended for him to have such right. Rather, insofar as we review state court proceedings under § 2254(d), we look to a positive pronouncement from the Supreme Court in order to meet the "clearly established" requirement of the new statute.

█ Nor do we attempt to make a guess as to how the Supreme Court would rule today on the issue at hand. It may very well be that, if faced with the question today, the

---

**4.** It is settled that the "contrary to" prong applies to questions of law, such as the question at issue here. *See Lockhart v. Johnson,* 104 F.3d 54, 56 (5th Cir.1997); *Drinkard,* 97 F.3d at 768.

Court would say that a defendant in Blankenship's circumstance is entitled to counsel. We need not, and do not, decide that now. Rather, our review is limited to whether the law was "clearly established" at the time the Court of Criminal Appeals entered its judgment.

It is instructive that, instead of adopting language from prior habeas jurisprudence, Congress, in enacting § 2254(d)(1), used the words "clearly established law," for, in another context, that phrase has a well-settled meaning that Congress may very well have used consciously in enacting the AEDPA. In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court announced that public officials sued individually for damages, in a *Bivens* [5] action alleging violations of constitutional rights, are liable only if their actions violated standards that were "clearly established" at the time. *Id.* at 639, 107 S.Ct. at 3038 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In explaining what is meant by "clearly established," the Court explained that "[t]his is not to say that an official action is protected ... unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640, 107 S.Ct. at 3039.

While we do not mean to engraft the law of qualified immunity onto habeas jurisprudence, the same reasoning may properly be applied here in understanding what is meant by "clearly established." As we have said, the Court in *Moffitt* gave, as one of its reasons for denying relief to a defendant who himself sought discretionary review, the fact that the defendant had had full benefit of counsel at the first appellate stage of the proceedings. Blankenship is in a similar situation, having been represented by Lantrip in the state court of appeals.

Considering the issue from the point of view of the Court of Criminal Appeals at the time it decided Blankenship's case, and giving that court the deference the AEDPA

requires, we cannot say that, in the words of *Anderson v. Creighton*, "the unlawfulness [of the court's ruling was] apparent." The explanation presented in *Moffitt* certainly could have given a reasonable jurist the impression that a defendant who once enjoyed the benefit of counsel to review the record, prepare a brief, and muster the evidence was not entitled to counsel on discretionary review, regardless of who requested that review. That would have been, as we articulated it in *Mata*, "a reasonable, good faith application of Supreme Court precedent." *Mata*, 99 F.3d at 1268.

Although one might also reasonably have concluded, from *Moffitt*, that a defendant should be afforded a lawyer to defend a state-initiated petition, that is not the question we are to decide under § 2254(d). The AEDPA tells us to consider habeas relief only if the law was "clearly established."

We are bound by the rigid constraints of the AEDPA and are not free to decide this question for the state court with the benefit of hindsight. Congress has made it plain that we may undermine the state courts in proceedings such as this only if their decisions are contrary to clear, then-existing Supreme Court precedent.

There is no such governing precedent here; the Supreme Court has never decided whether a criminal defendant has a right to assistance of counsel on state-requested discretionary review. Therefore, the Court of Criminal Appeals's adjudication was not contrary to clearly established federal law, as determined by the Supreme Court, and we are bound by the statute to deny relief.

AFFIRMED.

PARKER, Circuit Judge, dissenting:

I must respectfully dissent. The majority in addressing the issue of whether Blankenship has a right to counsel in the Texas Court of Criminal Appeals when the *State* has successfully sought discretionary review concludes that he does not. The majority

---

**5.** *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

opinion is contrary to clearly established, long-standing federal law.

The procedural history of this case is straightforward. Blankenship, with appointed counsel, was successfully prosecuted in the district court of Camp County, Texas where he was convicted of the offense of aggravated robbery. The Texas Court of Appeals reversed the conviction. *See Blankenship v. Texas,* 764 S.W.2d 22 (Tex.App.— Texarkana 1989). The *State* then sought discretionary review in the Court of Criminal Appeals and after review was granted, the *State* successfully prosecuted *its* appeal, and Blankenship's conviction was reinstated. *See Blankenship v. Texas,* 785 S.W.2d 158 (Tex. Crim.App.1990). Blankenship was without appointed counsel before the Court of Criminal Appeals.

The majority's analysis is equally straightforward. The majority reasons that since the Supreme Court has never specifically addressed whether there is a constitutional right to counsel for a discretionary review on the merits by a state court that was petitioned for by the State,[1] then there is no clearly established federal law establishing such a right as determined by the Supreme Court. And therefore, amended 28 U.S.C. § 2254(d)(1) controls and we shall not grant relief to Blankenship on his habeas petition.

The issues raised by the majority opinion will be addressed in turn. However, central to any analysis is one matter of fact and one issue of law, *i.e.,* the fact that it was the *State* and not Blankenship that sought discretionary review in the Court of Criminal Appeals; and then after review was granted, the legal issue becomes whether Blankenship had a constitutional right to counsel.

I. Sources of Blankenship's Constitutional Right to Counsel

A. "Critical Stage"

It has long been clearly established federal Supreme Court law that indigent defendants are entitled to appointed counsel at critical stages of a criminal case. The Sixth Amend-

ment guarantees that in "all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." *See* U.S. Const. amend. VI. "[T]he core purpose of the [sixth amendment] counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor. Later developments have led [the courts] to recognize that 'Assistance' would be less than meaningful if it were limited to the formal trial itself." *United States v. Ash,* 413 U.S. 300, 309–10, 93 S.Ct. 2568, 2573–74, 37 L.Ed.2d 619 (1973). Accordingly, a defendant has a right to counsel at "critical stages" of prosecution. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The Sixth Amendment right to counsel is determined by "whether potential substantial prejudice inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Smith v. Puckett,* 907 F.2d 581, 583 (5th Cir.1990) (quoting *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967)), *cert. denied,* 498 U.S. 1033, 111 S.Ct. 694, 112 L.Ed.2d 685 (1991).

A variety of proceedings have been established as "critical stages" triggering the right to counsel. *See Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (preliminary hearing); *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (sentencing phase); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (post-indictment line-up); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (preliminary hearing); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (trial); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (arraignment). It is not a timeline that determines if a proceeding implicates the Sixth Amendment right to counsel, but the interests at stake in such proceedings. *Compare Chewning v. Rogerson,* 29 F.3d 418, 421 (8th Cir.1994) (citing cases) (extradition *not* a "critical stage") *with*

---

1. Only a minority of states permit the State to seek discretionary review of criminal cases. *See, e.g.,* Alaska R.App.P. 402(a)(1); Fla.R.App.P. 9.030(a)(2); Iowa Code Ann. § 814.5(2); Minn. R.Crim.P. 29.04; N.C.Gen.Stat. § 7A–31; Tex. Code Crim.Pro. art. 44.45(b)(1) & 4.04 § 2.

*Mempa,* 389 U.S. 128, 88 S.Ct. 254 (sentencing phase a "critical stage" triggering right to counsel). In *Mempa,* the Court explained that *Gideon*'s progeny "stand for the proposition that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. at 134, 88 S.Ct. at 257. Non-critical stages not affecting substantive rights include the taking of fingerprints, blood, hair, and post-arrest photographs, *see United States v. Bullock,* 71 F.3d 171, 177 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1365, 134 L.Ed.2d 531 (1996); *United States v. Dougall,* 919 F.2d 932, 935 (5th Cir.1990), *cert. denied,* 501 U.S. 1234, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991), and routine pre-sentence interviews in non-capital cases, *United States v. Woods,* 907 F.2d 1540, 1542 (5th Cir.1990), *cert. denied,* 498 U.S. 1070, 111 S.Ct. 792, 112 L.Ed.2d 854 (1991).

The appeal by the State here amounted to an attack on the reinstatement of Blankenship's innocence, the same interest at stake at trial. Blankenship stood in the same position as Gideon, defending his innocence against the resources of the State, *see Gideon,* 372 U.S. at 335, 83 S.Ct. at 792, a position in which he is clearly entitled to counsel. Blankenship had the same liberty interest at stake before the Texas Court of Criminal Appeals as in any preliminary hearings he may have had and at the trial itself. Clearly when the Texas Court of Criminal Appeals considered the merits of Blankenship's case on the *State*'s petition, it was in a critical stage of the State's prosecution of this criminal case.

**B. The Right to Appellate Counsel under the Equal Protection and Due Process Clauses**

In addition to having a Sixth Amendment right to counsel at the "critical stage" of the Texas Court of Criminal Appeals' decision to reinstate his vacated conviction, Blankenship also had a long-established right to counsel before that state court under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. "[I]f a state has created appellate courts as an integral part of the system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and the Equal Protection Clauses of the Constitution." *Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985) (citation and internal quotation omitted).

**1. Blankenship's Equal Protection Right to Counsel**

It is well established that an indigent criminal appellant has a right to an attorney for a first appeal as of right. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987); *United States v. Guerra,* 94 F.3d 989, 994 (5th Cir.1996) (citing *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)). The right to appellate counsel as derived from the Equal Protection Clause is based on an equality of "meaningful access" to courts irrespective of financial resources. *See Ross v. Moffitt,* 417 U.S. 600, 611, 615, 94 S.Ct. 2437, 2444, 2447, 41 L.Ed.2d 341 (1974). "The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant *an adequate opportunity* to present his claims fairly in the context of the State's appellate process." *Id.* at 616, 94 S.Ct. at 2447 (emphasis added). The *Douglas* Court reasoned that an indigent convict is denied equal protection where a person able to afford counsel "enjoys the benefit of counsel's examination into the record, research of the law, and marshaling of arguments on his behalf ..." 372 U.S. at 358, 83 S.Ct. at 817, while "only the barren record speaks for the indigent," *Id.* at 356, 83 S.Ct. at 816, leaving him with "only the right to a meaningless ritual," *Id.,* and not "a meaningful appeal," *Id.* at 358, 83 S.Ct. at 817. Blankenship faced that exact circumstance when his case was reviewed by the Texas Court of Criminal Appeals and was thus denied his equal protection right to counsel.

Beginning with *Griffin v. Illinois,* where it was held that equal protection was not afforded an indigent appellant where the na-

ture of the appellate review "depend[ed] upon the amount of money he has," 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956), and continuing through *Douglas v. California, Ross v. Moffitt,* and *Pennsylvania v. Finley,* the Supreme Court has consistently held that a state may not deny an indigent convict meaningful access to the appellate process. States that have established an appellate process must find "means of affording adequate and effective appellate review to indigent defendants." *Griffin,* 351 U.S. at 20, 76 S.Ct. at 591.

While the Supreme Court has found no equal protection right to counsel where it judged an attorney to be unnecessary for meaningful access to the *process* of seeking discretionary review, *Ross,* 417 U.S. 600, 94 S.Ct. 2437, counsel is necessary for meaningful access to the Texas Court of Criminal Appeals' review *on the merits* as sought by the State. Once a petition for discretionary review has been granted, appointment of counsel is *statutorily required* for the discretionary review *on the merits.*[2] *See Polk v. Texas,* 676 S.W.2d 408, 411 (Tex.Crim.App. 1984). After the *Polk* decision, the Texas Legislature saw fit to amend the statute in 1987 to make even more explicit the statutory right to counsel for a discretionary review on the merits, thus registering its concurrence on the importance of counsel for a review on the merits. *See Peterson v. Jones,* 894 S.W.2d 370, 372–73 (Tex.Crim.App.1995) (citing Acts 1987, 70th Leg., ch. 979, secs. 2, 3, eff. Sept. 1, 1987).[3] Given that the Texas Legislature and Texas's highest criminal court have assessed the Texas criminal appellate process and found the appointment of counsel to be a necessary part of that process, Blankenship's equal protection right to

"meaningful access" to the appellate process was glaringly disregarded by the absence of counsel. The lack of an attorney diminished Blankenship's access to the appellate process to the point of non-existence.

### 2. Blankenship's Due Process Right to Counsel

In addition to satisfying the Equal Protection Clause, a state must satisfy the Due Process Clause where it establishes appellate review as a part of a state's trial system of criminal cases. *Evitts,* 469 U.S. at 393, 105 S.Ct. at 834; *Griffin,* 351 U.S. at 18, 76 S.Ct. at 590. In an appeal as of right, an indigent convict attempting to demonstrate that his conviction is unlawful has a clearly established right to counsel. *Douglas,* 372 U.S. 353, 83 S.Ct. 814. Denial of counsel to an indigent *defending* against an appeal by the State of a vacated conviction is at least as compelling. Such an appellee is protecting an even greater interest than that in *Douglas*—his innocence.

The due process basis for the right to appellate counsel derives from the defendant having an interest, *i.e.,* liberty, that he needs "shielded" from the state. *See Ross,* 417 U.S. at 610–11, 94 S.Ct. at 2443–44; *United States v. Palomo,* 80 F.3d 138, 142 (5th Cir. 1996); *see also Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973) (because probation revocation involves the loss of liberty, due process must be accorded a probationer and in "certain cases ... fundamental fairness—the touchstone of due process—will require ... counsel...."). Blankenship's liberty depended on his ability to present his case. The Court has described the necessity of appellate counsel to satisfy due process: "To prosecute an appeal,

---

**2.** Such is required whether the review is sought by the defendant, the State, or on the court's own motion, as permitted under Tex.Code Crim.Proc. Ann. art. 44.45. *See Polk,* 676 S.W.2d at 411.

**3.** The *Peterson* court recited the statutory requirements for counsel for an indigent convict. Whenever the court determines that a defendant charged with a felony or a misdemeanor punishable by imprisonment is indigent ..., the court shall appoint one or more practicing attorneys to defend him. An attorney appointed under this subsection shall represent the defendant until charges are dismissed, the de-

fendant is acquitted, appeals are exhausted, or the attorney is relieved of his duties by the court or replaced by other counsel. Tex.Code Crim.Proc.Ann. art. 26.04(a).

. . . .

Article 1.051(d)(2), in relevant part, requires a trial court to appoint counsel to represent an indigent defendant in: "an appeal to the Court of Criminal Appeals if the appeal is made directly from the trial court or if a petition for discretionary review has been granted."

*Peterson,* 894 S.W.2d at 373.

a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake." *Evitts*, 469 U.S. at 396 & n. 6, 105 S.Ct. at 830 & n. 6; *see also Gagnon*, 411 U.S. at 790, 93 S.Ct. at 1763 (in probation revocation hearing where issue is complex, due process requires counsel). Without counsel, the appeal is a "meaningless ritual" for the convict. *Evitts*, 469 U.S. at 394, 105 S.Ct. at 834 (quoting *Douglas*, 372 U.S. at 358, 83 S.Ct. at 817). Without counsel, Blankenship was denied a fair opportunity to obtain an adjudication on the merits. *See Evitts*, 469 U.S. at 405, 105 S.Ct. at 840 (noting same due process problem in *Griffin* and *Douglas* ); *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) ("The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law.... He requires the guiding hand of counsel at every step in the proceedings against him.").

### C. *Ross v. Moffitt:* Is Counsel a Sword or Shield?

The Supreme Court has found no right to counsel under either the Due Process or Equal Protection Clauses for an indigent *petitioning* a state court for *discretionary* review. *Ross*, 417 U.S. 600, 94 S.Ct. 2437. However, the majority's reliance on *Ross* in finding Blankenship to have no constitutional right to counsel is misplaced. The *Ross* Court addressed the question of whether an *indigent petitioner seeking* discretionary re-

view of his conviction by a state court had a constitutional right to counsel for the *petition-for-review process.* That process is a horse of another color compared to a review of a case *on the merits* initiated *by the State,* which is the scenario presented by Blankenship. The *Ross* Court explained that a petitioner seeking review does not have a constitutional right to counsel because a court evaluating a petition for review has a distinct function which does not concern the correctness of a lower court's adjudication but instead, whether the subject matter of the appeal involves significant public interest or significant legal principles. *Ross,* 417 U.S. at 615, 94 S.Ct. at 2446. The Court explained that an attorney is not required for the procedures and process involved in a petition for review because such a petition can be assessed based on the record from the court below, and thus no denial of equal protection, or "meaningful access," occurs.[4] *Id.* at 611–16, 94 S.Ct. at 2444–47. In addition, an indigent *petitioning* for discretionary review does not have an interest at stake that calls out for due process protection from the resources of the State.

> [I]t is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a jury's finding of guilt made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him from being "haled into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt.

417 U.S. at 610, 94 S.Ct. at 2444 (quoting *Gideon,* 372 U.S. at 344, 83 S.Ct. at 796). In holding that the petition-for-review process

4. The majority ignores this clear articulation by Justice Rehnquist of the context for *Ross's* right to counsel question. *See* slip op. *supra* at p. 2101 (manuscript). In *Ross* the Court gave, as one of its reasons for denying the right to counsel to a indigent convict-petitioner in the petition-for-review process, the fact that the appellate record was created while the indigent had counsel in proceedings below and that such a record was an "adequate basis for [the North Carolina Supreme Court's] decision to grant or deny review." *Ross*, 417 U.S. at 615, 94 S.Ct. at 2446. The Court explained that it was rejecting a right to

counsel for the limited context of the process of the state court deciding if a case presented a significant public interest or legal issue worthy of taking the case for review. *Id.* The Supreme Court did not relate that holding in any way to the issue of entitlement to counsel for the actual review on the merits. The Court provided no basis for the majority's extrapolation that *Ross* forecloses Blankenship's petition. The majority's reasoning fails to acknowledge that the Court was considering the necessity of an attorney to the state supreme court's assessment of the worthiness of a case for discretionary review.

does not implicate a due process right to counsel, the *Ross* Court was careful to distinguish the interest at stake for a convict seeking discretionary review from the very different character of the interest at stake for a defendant at trial. In the review on the merits of Blankenship's vacated conviction, the State had the very same purpose as it did in trial: to convert Blankenship's innocence to guilt. *See Id.* ("purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt"). Such circumstances, where counsel functions as a "shield" rather than as a "sword," have never been found devoid of a right to counsel. *See Id.* In fact, the Court has been careful to maintain due process and equal protection requirements for the appellate process. *Evitts,* 469 U.S. at 393, 105 S.Ct. at 834.

## II. Review under the AEDPA's § 2254(d)(1)

### A. "Clearly Established" Does Not Mean "On All Fours"

As an initial matter, I take issue with the majority's logic in devising its scope of review. It simply cannot be that under amended § 2254(d)(1) federal courts may only grant a habeas petition where there is a Supreme Court decision "on all fours" with the habeas petitioner's factual situation. *See supra* at p. 1205 (manuscript) ("The Supreme Court never has decided whether a criminal defendant has a right to assistance of counsel on state-requested discretionary review. Therefore, we might easily say that the right was not 'clearly established.' "). The Supreme Court declines to hear most of the cases presented to it and has heard, on average, around 100 cases per year in recent years. *See Supreme Court Practice* 33, 164 (Robert L. Stern *et al.* eds., 7th ed. 1993) (presenting docket statistics).

Contrary to the majority's approach, when amended § 2254(d)(1) makes relief available to a habeas petitioner only if a state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court," it does not limit the granting of habeas petitions to only those petitioners able to present Supreme Court decisions "on all fours," but rather instructs the federal courts to examine a state court's decision in relation to the Supreme Court's body of law, its jurisprudence. *See Childress v. Johnson,* 103 F.3d 1221 (5th Cir.1997) (reviewing state court adjudication in relation to Supreme Court's Sixth Amendment jurisprudence); *Lindh v. Murphy,* 96 F.3d 856, 869 (7th Cir.1996), *cert. granted in part,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). Under amended § 2254(d)(1), our review concerns the application of federal law, as set out by the Supreme Court, and a petition is not precluded simply because the facts of a petitioner's case do not precisely track the facts of a case decided by the Supreme Court. We review state court decisions in relation to "clearly established Federal law," 28 U.S.C. § 2254(d)(1) (as amended), not federal law as it appears to be "on all fours" with a petitioner's facts.

The majority explains that it looks only to "positive pronouncement[s]" from the Supreme Court, *supra* at p. 1205 (manuscript), in order to determine what federal law is "clearly established" under § 2254(d)(1). The majority should look at the positive pronouncements by the Supreme Court as recited in the preceding discussion. *See* discussion *infra* part I (citing *inter alia, Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877; *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792; *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585). The petitioner's right to counsel is premised on several of the Supreme Court's more well-known decisions in the area of constitutional criminal procedure. We cannot look only at one case where the Court did not find a right to counsel, as the majority does, but we must do as our task requires and review federal law, as determined by the Supreme Court, and look also to the Court's decisions finding a right to counsel and the principles, reasoning and circumstances at hand in those cases. Section 2254(d)(1) has effected no change in our regard of what law is and is not *"clearly established"* in the habeas context. *See Hogan v. Hanks,* 97

F.3d 189, 192 (7th Cir.1996), *cert. denied,* 65 U.S.L.W. 3692 (U.S. April 14, 1997) (No. 96–7751); *Lindh,* 96 F.3d at 869. Both *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and the amended § 2254(d)(1) are designed to ensure that state judgments are not affected by legal rules established after a conviction becomes final. A legal rule or right is *"clearly established"* if it was "compelled by existing precedent." *See Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990); *see also Gray v. Netherland,* —— U.S. ——, ——, 116 S.Ct. 2074, 2083, 135 L.Ed.2d 457 (1996); *Lindh,* 96 F.3d at 869 (rejecting any guidance of official immunity doctrine as improper analogy to § 2254(d)(1)). Blankenship's right to counsel does not depend on any expansion of legal doctrine or articulation of any new legal rule. That right had been announced by the Court long in advance of the Texas Court of Criminal Appeals' disposition of the State's appeal and we are compelled by the Court's precedent.

### B. The Proper Standard Applied

In *Mata v. Johnson,* 99 F.3d 1261, 1266 (5th Cir.1996), *vacated in part,* 105 F.3d 209 (5th Cir.1997), we extended our application in *Drinkard v. Johnson,* 97 F.3d 751 (5th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1114, —— L.Ed.2d —— (1997), of *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), to the AEDPA's amendments to § 2254 and held that all of amended § 2254's standards of review are immediately applicable. In *Mata* we explained what amended § 2254(d)(1) requires of us in our review of habeas petitions. Under the amended statute, our inquiry must be "whether a state judge could reasonably read Supreme Court precedent as permitting the result of which [the petitioner] now complains." *Mata,* 99 F.3d at 1268; *see also Penry v. Lynaugh,* 492 U.S. 302, 350, 109 S.Ct. 2934, 2963, 106 L.Ed.2d 256 (1989)

(Scalia, J., concurring in part, dissenting in part).

In *Drinkard,* we delved into the distinctions between mixed fact-law questions and purely legal questions as we addressed the language of amended § 2254(d)(1) with its "contrary to" and "unreasonable" terminology. Such a distinction is often difficult to make as disparate factual circumstances, more often than not, shape questions to be that of mixed law and fact. Thus, most habeas petitioners will be required to demonstrate that the ruling of the state court is an unreasonable application of clearly established federal law as the Supreme Court has determined it. However, the amended statute provides alternative modes of inquiry because we look to the *"adjudication* of the claim," 28 U.S.C. § 2254(d) (as amended), which may present a compilation of issues for our examination, and thus it will also often be the case that petitioners demonstrate that the adjudication of their claim was either "a decision that was contrary to, *or* involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1) (as amended) (emphasis added).[5] *See Childress v. Johnson,* 103 F.3d 1221, 1225 (5th Cir.1997) ("To prevail, [the petitioner] must show that the state courts' resolution of his constitutional claim was 'contrary to' or 'involved an unreasonable application of' Supreme Court precedent."); *Hall v. Washington,* 106 F.3d 742, 745 (7th Cir.1997); *Ford v. Ahitow,* 104 F.3d 926, 936 (7th Cir.1997) (noting that under amended § 2254(d)(1) petitioner must show that state court adjudication was contrary to clearly established Supreme Court case law, or was an unreasonable application of clearly established Supreme Court case law). The "unreasonableness" standard leaves the state court's conclusion intact if there is more than one plausible legal outcome. *See Mata,* 99 F.3d at 1268 ("a reasonable, good faith application of Supreme Court precedent will immunize the state court conviction from feder-

---

**5.** The majority contradicts itself by asserting a sharply bifurcated inquiry of *either* "contrariness" *or* "reasonableness" of the state court decision, invoking the " 'contrary to' prong," *see* maj. op. *supra* at p. 1210 n. 4, and then applying

language associated with "reasonableness" inquiries, *see* maj. op. *supra* pp. 1205–06 (citing *Mata's* reasonableness analysis). The majority claims one approach but actually follows another.

al habeas reversal"). However, Congress would not have used the standard of unreasonableness if it was commanding total deference to state courts' decisions. "Some decisions will be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary, that a writ must issue." *Hall,* 106 F.3d at 745. At the same time, the "contrary to" aspect of § 2254(d)(1) dictates that when a legal issue is considered, the law "as determined by the Supreme Court" governs. "Section 2254(d) requires us to give the state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law 'as determined by the Supreme Court of the United States' that prevails." *Fern v. Gramley,* 99 F.3d 255, 260 (7th Cir. 1996) (quoting *Lindh,* 96 F.3d at 869); *see also* U.S. Const. art. VI, supremacy clause.

Given the multiple sources of an indigent convict's right to counsel established by the Supreme Court and the limited circumstances in which the Supreme Court has found no right to counsel, a state court judge could not reasonably read the Supreme Court's positive pronouncements of the right to counsel to say that Blankenship does not have a right to counsel for a review on the merits, as sought by the State. Such a holding is not only unreasonable, it is also contrary to federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1) (as amended). Blankenship clearly had a constitutional right to counsel. Such was well established at the time that the Texas Court of Criminal Appeals granted the State's petition for review and heard the State's case. The cases recognizing the right to counsel for "critical stages," the right to counsel on a first appeal as of right, the right to due process where a liberty interest is at stake, and the right to meaningful access to the appellate process under the Equal Protection Clause are dispositive of this issue. *See* discussion *infra* part I.

### III. Conclusion

Recognizing Blankenship's right to counsel does not expand the Supreme Court's clearly established right to counsel jurisprudence, but rather, it serves as an application of its pronouncements that bind our decisions. When the State was permitted to take up its sword in the Texas Court of Criminal Appeals it became obliged to provide Blankenship a lawyer to hold his shield.

Blankenship was clearly denied his constitutional right to counsel. The state court resolution of this constitutional claim offends clearly established Supreme Court precedent and we must reverse and remand to the district court with instructions to issue the great writ.