Frank Ray CHEWNING, Appellant,

v.

Russell ROGERSON, Appellee.

No. 93–3459.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1994.

Decided July 11, 1994.

---

B. John Burns of Des Moines, IA, argued, for appellant.

Thomas D. McGrane, Asst. Atty. Gen., of Des Moines, IA, for appellee.

Before FAGG, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In October, 1989, Dianne Chewning was found dead in a motel room in Iowa. She had been strangled. After notice of a fugitive warrant from Iowa authorities for Frank Chewning, Dianne's husband, police in Utah arrested him in early November. A hearing on the fugitive warrant was then scheduled for the following day.

The public defender's office where Mr. Chewning was arrested customarily sends a lawyer to the jail every day to see if any of the prisoners scheduled for court hearings on that day needs a lawyer. When the public defender asked Mr. Chewning if he wanted to talk to a lawyer, Mr. Chewning said that he did. The public defender subsequently appeared at the extradition hearing with Mr. Chewning, who agreed that he would return to Iowa without formal extradition. Three days later, two police officers from Iowa arrived in Utah to take Mr. Chewning back to Iowa. In two separate interviews, each one after the police officers had informed Mr. Chewning of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Mr. Chewning admitted killing his wife. Those statements were admitted at his state court trial in Iowa, and a jury convicted Mr. Chewning of second-degree murder in mid–1990.

On direct appeal, Mr. Chewning's conviction was affirmed in late 1991. *See State v. Chewning*, 485 N.W.2d 106 (Iowa Ct.App. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 309 (1992). The parties apparently agree that Mr. Chewning has exhausted his state court remedies.

Mr. Chewning petitioned for habeas corpus relief under 28 U.S.C. § 2254 in federal district court in mid–1992, alleging that the statements that he gave were taken in violation of his right to counsel under the sixth amendment. In late 1993, the district court denied Mr. Chewning's petition. Mr. Chewning appeals.

The essence of Mr. Chewning's argument on appeal is that by having the public defender appear with him at the extradition hearing, he invoked his right to counsel under the

sixth amendment, and therefore that all subsequent statements given to police in the absence of counsel were inadmissible. (Mr. Chewning does not argue that his fifth amendment rights were violated.) We disagree and therefore affirm the district court.[1]

## I.

The sixth amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." *See* U.S. Const. amend. VI. "[T]he core purpose of the [sixth amendment] counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor. Later developments have led [the courts] to recognize that 'Assistance' would be less than meaningful if it were limited to the formal trial itself." *United States v. Ash,* 413 U.S. 300, 309–10, 93 S.Ct. 2568, 2573–74, 37 L.Ed.2d 619 (1973); *see also Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) ("to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself"). The courts have therefore interpreted the sixth amendment guarantee of assistance of counsel as becoming vested as of "the initiation of criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion).

■ The Utah police arrested Mr. Chewning on a fugitive warrant from Iowa that was issued after a formal criminal complaint was made against him by Iowa prosecutorial authorities. The parties agree that with that complaint, Mr. Chewning acquired the right to assert the protections of the sixth amendment in all " 'critical' stages of the [criminal] proceedings" against him—in other words, "whenever necessary to assure a meaningful 'defence,' " *United States v. Wade,* 388 U.S. 218, 224–25, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967). *See also Michigan v. Jackson,*

475 U.S. 625, 632 n. 5, 106 S.Ct. 1404, 1408–09, 89 L.Ed.2d 631 (1986) ("after the initiation of adversary judicial proceedings, the [sixth amendment] provides a right to counsel at a 'critical stage' even when there is no interrogation and no [fifth amendment] applicability"), and *United States v. Wade,* 388 U.S. at 226, 87 S.Ct. at 1932 ("[i]t is central ... that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial").

■ Initiation of criminal proceedings is, however, not the only prerequisite for the right to claim the assistance-of-counsel protections of the sixth amendment. The right is not self-executing but must be invoked by the person claiming it. *See, e.g., Patterson v. Illinois,* 487 U.S. 285, 290, 108 S.Ct. 2389, 2393–94, 101 L.Ed.2d 261 (1988) ("[p]etitioner ... at no time *sought* to exercise his right to have counsel present") (emphasis supplied), *see also id.* at 290 n. 3, 108 S.Ct. at 2393–94 n. 3 ("the analysis changes markedly once an accused even *requests* the assistance of counsel") (emphasis in original), and *Michigan v. Jackson,* 475 U.S. at 636, 106 S.Ct. at 1411 ("if the police initiate interrogation *after a defendant's assertion* ... of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid") (emphasis supplied), *see also id.* at 626, 635, 106 S.Ct. at 1405–06, 1410–11. *See also McNeil v. Wisconsin,* 501 U.S. 171, 173, 111 S.Ct. 2204, 2206, 115 L.Ed.2d 158 (1991) ("once this [sixth amendment] right to counsel has attached *and* been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective") (emphasis supplied), and *Maine v. Moulton,* 474 U.S. at 170, 106 S.Ct. at 484 ("[o]nce the right to counsel has attached *and been asserted,* the State must of course honor it") (emphasis supplied).

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, adopting the report and recommendations of the Honorable Mark W. Bennett, United States Magistrate Judge for the Southern District of Iowa. *See* 28 U.S.C. § 636(b)(1)(B).

■ It is well settled that extradition proceedings are not considered criminal proceedings that carry the sixth amendment guarantee of assistance of counsel. *See, e.g., Judd v. Vose,* 813 F.2d 494, 497 (1st Cir. 1987), and *Caltagirone v. Grant,* 629 F.2d 739, 748 n. 19 (2d Cir.1980). *See also McDonald v. Burrows,* 731 F.2d 294, 297 (5th Cir.1984), *cert. denied,* 469 U.S. 852, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984), and *United States ex rel. Calhoun v. Twomey,* 454 F.2d 326, 328 (7th Cir.1971) (same holding as to extradition proceedings, but with respect to sixth amendment right to speedy trial). Indeed, Mr. Chewning does not argue that the sixth amendment guaranteed the assistance of counsel at the extradition hearing. His argument is, rather, that by asking a lawyer to represent him at the extradition hearing, he asserted his right to counsel for all subsequent events where that right would be applicable, specifically, the police-initiated interrogations that took place after the extradition hearing.

## II.

■ In his state trial court proceedings, Mr. Chewning moved to suppress the statements that he had made to the Iowa police officers. At a hearing on that motion, the public defender from Utah testified that he was at the jail on the day that "Mr. Chewning was on the court calendar charged as a fugitive from justice" and that Mr. Chewning "said he wanted to talk to an attorney." After meeting with Mr. Chewning for "[t]en to fifteen minutes," the public defender agreed "to go ahead and represent [Mr. Chewning] simply as a convenience to the court, to make sure [Mr. Chewning] understood his rights as to extradition." The public defender further noted that "[w]e had the extradition forms there. Whenever we have a fugitive case, the extradition forms are already prepared so if the person wants to waive extradition, we can go through the forms there and they sign them in front of the judge." The public defender further stated that "[w]e went through the form item by item and I made sure he understood his rights concerning extradition, and what he could do if he did not want to waive extradition." At the extradition hearing, the public

defender told the court "that we were representing [Mr. Chewning]." After the hearing, the public defender "had no further contact" with Mr. Chewning.

On cross-examination, the public defender acknowledged that he never "advised [Mr. Chewning] not to speak with anyone until [Mr. Chewning] was returned to Iowa and had an attorney [there]," stating that "it never came up.... He told me he wanted to waive the extradition. We did not discuss the facts of the case at all." The public defender said in addition that "[w]e weren't representing [Mr. Chewning] on the murder charge" and that the role of the public defender's office "was confined only to the question of extradition." Mr. Chewning apparently did not testify at the hearing on his motion to suppress. (We do not have the state trial court records, but the parties submitted a joint appendix with transcript excerpts. No testimony from Mr. Chewning appears in those excerpts, nor does the state trial court refer to any such testimony in its order denying the motion to suppress.)

The public defender's testimony that his representation of Mr. Chewning was only for the extradition hearing was uncontradicted. The question confronting us at this juncture, then, is whether the mere appearance of the public defender with Mr. Chewning at the extradition hearing—a proceeding not implicating the sixth amendment, *see, e.g., Judd v. Vose,* 813 F.2d 494, 497 (1st Cir.1987), and *Caltagirone v. Grant,* 629 F.2d 739, 748 n. 19 (2d Cir.1980)—may be construed as the invocation by Mr. Chewning of his sixth amendment right to counsel with respect to the murder charge, so as to make inadmissible the statements he subsequently gave to the Iowa police officers.

■ The existence of an attorney-client relationship between the public defender and Mr. Chewning for the extradition hearing would not have "independently trigger[ed] the ... right to counsel" under the sixth amendment if the state charges had not already been filed. *Moran v. Burbine,* 475 U.S. 412, 429 n. 3, 106 S.Ct. 1135, 1145 n. 3, 89 L.Ed.2d 410 (1986). Only with the initiation of the state charges did the protections

of the sixth amendment become available. *See, e.g., Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion). We have no testimony from Mr. Chewning that he considered the public defender's representation at the extradition hearing to extend to the murder charge as well or, if he did consider it in that way, that he said so to anyone else. We have, moreover, the uncontradicted testimony of the public defender that the representation did *not* extend to the murder charge.

We do not believe that an appearance at an extradition hearing, without any other supporting evidence, can reasonably be considered a positive enough assertion to amount, as a matter of law, to an invocation of the sixth amendment right to counsel. We therefore turn to the question of waiver when that sixth amendment right has attached but has never been invoked.

### III.

The Supreme Court has repeatedly held that once a person has invoked the right to counsel under the sixth amendment, that right may not be waived during police-initiated interrogation unless the waiver is made in the presence of the person's lawyer. *See, e.g., McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991); *Michigan v. Jackson,* 475 U.S. 625, 635–36, 106 S.Ct. 1404, 1410–11, 89 L.Ed.2d 631 (1986); and *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985). If the person has not invoked that right, however, a waiver of the right may be made during police-initiated interrogation by the person acting alone. *See, e.g., Patterson v. Illinois,* 487 U.S. 285, 291, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988). Of course, the waiver must be made voluntarily as well as knowingly and intelligently. *See, e.g., id.* at 292, 292 n. 4, 108 S.Ct. at 2394–95 n. 4.

Mr. Chewning does not challenge the state's assertions that the Iowa police officers read his *Miranda* rights to him or that he voluntarily signed a form indicating that he understood those rights before each of the police-initiated interviews in which he admitted killing his wife. Nor has he disputed his capacity to comprehend those forms. The

Supreme Court has explicitly declared that under such circumstances, a waiver of the sixth amendment right to counsel is constitutionally valid. *See, e.g., Patterson,* 487 U.S. at 291–93, 296, 298, 2394, 2397, 2397–98. We hold, accordingly, that Mr. Chewning's waiver was effective and therefore that the state trial court properly admitted the subsequent statements that Mr. Chewning made.

### IV.

For the reasons stated, we affirm the district court.