# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3246

_____

| | | |
|---|---|---|
| Steven L. Manning, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Michael Bowersox, Superintendent; | * | |
| Jeremiah (Jay) Nixon, | * | |
| Attorney General, State of Missouri. | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 9, 2002

Filed: November 8, 2002

_____

Before WOLLMAN, HEANEY and BYE, Circuit Judges.

_____

HEANEY, Circuit Judge.

Steven Manning appeals the district court's[1] denial of his petition for a writ of habeas corpus. We affirm in part and reverse in part.

_____

[1]The Honorable Ortrie D. Smith, United States District Court for the Western District of Missouri.

# BACKGROUND

In February of 1984, Charles Ford and Mark Harris were kidnapped at gunpoint and held for ransom. Once released, Ford and Harris did not immediately report the crime because Ford, an admitted drug dealer, was concerned that law enforcement might focus on his own criminal activity. When they did report the abduction several months later, they stated they could not identify their captors because they were blindfolded during the kidnapping. With no information pointing to suspects, the case was not pursued.

In 1989, the investigation was reopened based on recent statements from a person alleging to be the ringleader, Anthony Mammolito. Mammolito implicated Manning, and Manning was formally charged in Clay County, Missouri Circuit Court on July 20, 1990.

Manning was arrested on the Missouri charges in Chicago on July 26, 1990, and held in Cook County Jail awaiting extradition to Missouri. Because Manning was also a suspect in an Illinois murder, the FBI planted a government informant in his cell to try to collect evidence about the Illinois crimes. The informant's agreement specified that he was not to elicit any information about Manning's pending Missouri charges. However, the informant did talk about the Missouri charges, and agreed to help Manning fabricate an alibi defense using the informant's girlfriend, Sylvia Herrera. The FBI then met with Herrera to go over what information she should attempt to elicit from Manning. Pursuant to her agreement with the FBI, Herrera began to record her conversations with Manning.

Manning was tried in October of 1991, but the jury locked, resulting in a mistrial. He was tried again in January of 1992. At this trial, Herrera testified extensively about her work as a government informant and the plan to fabricate an alibi defense.

Also testifying at Manning's trial was Carolyn Heldebrand, the sister of one of the kidnapping victims. In 1990, as part of the investigation in this case, she was shown two photo line-ups. Manning was included in each line-up, and he was the only person whose picture appeared in both photo spreads. At trial, she testified that she was the one who paid the ransom, and she saw the perpetrator–Manning–during the ransom drop.[2]

On January 24, 1992, Manning was convicted of two counts of kidnapping and two counts of armed criminal action. Based on Manning's status as a prior offender, the court imposed consecutive life sentences on each of the kidnapping convictions and consecutive fifty-year sentences on each of the armed criminal action convictions. Manning exhausted his state court remedies through direct appeals and post-conviction proceedings. He then filed a petition for a writ of habeas corpus. The district court denied relief, but granted a certificate of appealability on essentially four issues: 1) whether the use of government informants after Manning was charged violated his constitutional right to counsel; 2) whether the government's pretrial identification tactics were impermissibly suggestive; 3) whether the substantial delay between the commission of the crime and the trial deprived Manning of due process; and 4) whether the government knowingly elicited perjured testimony at Manning's trial. Finding that Manning's right to counsel was violated by the government's use of informants, we reverse the district court on that ground, and affirm the district court regarding the identification and pretrial delay issues.[3]

---

[2]Although Heldebrand had previously picked Manning out of the photo line-ups, she was not able to identify him as the kidnapper at either the pretrial deposition in this matter or the first trial.

[3]Our decision on Manning's right to counsel claim is dispositive, but we still address the precharging delay and pretrial identification claims because these issues are likely to come up again if the government pursues a new trial. See United States v. Cannon, 88 F.3d 1495, 1503 (8th Cir. 1996) (deciding non-dispositive issues that may arise at second trial for sake of judicial economy). As to Manning's claim that

**DISCUSSION**

I.      STANDARD OF REVIEW

In habeas corpus cases, we are directed to issue a writ of habeas corpus where the lower court decision was, *inter alia*, "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1) (2002).

II.     THE GOVERNMENT'S USE OF INFORMANTS

Manning claims that the government's use of Sylvia Herrera as an informant violated his constitutional right to counsel. Criminal defendants are guaranteed the right to counsel at all critical stages of criminal proceedings. Massiah v. United States, 377 U.S. 201, 205 (1964). "[T]he prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." Maine v. Moulton, 474 U.S. 159, 171 (1985). Consequently, the government may not, either directly or through its agents, deliberately elicit incriminating information from suspects without counsel present. Id. at 173-74.

It is undisputed that Herrera was acting as a government agent here, pursuant to her agreement with the FBI. However, the government suggests that no right to counsel attached because Manning was only charged by complaint, rather than indictment, when he spoke with Herrera. Our cases make no such distinction. See

the government used perjured testimony at trial, the district court did not hold an evidentiary hearing on the matter, leaving our record incomplete. We believe the trial court, perhaps benefitted by an evidentiary hearing, will be in a better position to consider this claim than our court.

Chewning v. Rogerson, 29 F.3d 418, 420 (8th Cir. 1994) (holding filing of charges is a critical stage for sixth amendment purposes); Smith v. Lockhart, 923 F.2d 1314, 1318 (8th Cir. 1991) (listing criminal stages at which right to counsel attaches, including filing of complaint). The right to counsel attaches to interrogations conducted after the initiation of adversarial criminal proceedings against the defendant; it is of no import whether the proceedings were initiated by complaint or indictment. Moulton, 474 U.S. 159, 170 (1985); see also Gilmore v. Armontrout, 861 F.2d 1061, 1070 (8th Cir. 1988) (recognizing sixth amendment applies to "interrogation activities conducted 'at or after the initiation of adversary criminal proceedings–whether by way of formal charge, preliminary hearing, indictment, information or arraignment'") (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)). The right to counsel attaches not only to direct confrontations by known government officers, but also "indirect and surreptitious interrogations" by covert government agents and informants. United States v. Henry, 447 U.S. 264, 272-73 (1980) (quoting Massiah, 377 U.S. at 206).

The district court recognized that the government is not involved in interrogation where a government agent merely acts as a listening post.[4] Kuhlmann v. Wilson, 477 U.S. 436, 458-59 (1986). However, that is not the case here. Rather, similar to Moulton, the government here deliberately created a circumstance ripe for its agents to elicit incriminating statements from Manning.

In Moulton, one codefendant agreed to work as a government informant against the other codefendant. The informant wore a recording device in a meeting with the defendant. The police claimed that the recording device was worn not to elicit

---

[4]We note that the listening post in Kuhlmann was the defendant's jailhouse cellmate. Kuhlmann, 477 U.S. 439-40. While this fact is not dispositive, a fellow inmate certainly has a greater opportunity to simply "keep his ears open," id. at 439, than does an outsider who often must affirmatively initiate the contact with the jailed defendant.

incriminating information, but instead for the informant's own safety. The Supreme Court found this argument unpersuasive: "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation . . . as is the intentional creation of such an opportunity." Moulton, 474 U.S. at 176.

In Manning's case, the government employed two informants to elicit incriminating information from Manning after he was charged. First, the government planted an informant in Manning's cell. Although the FBI told the informant to limit conversation to the Illinois investigation, rather than the charged Missouri crimes, he did not follow suit. The FBI sanctioned this activity through its continued use of the informant, and eventually encouraged him to get more information on the Missouri crimes. The informant then involved his girlfriend, Sylvia Herrera, by suggesting that Manning use her to create an alibi. Herrera then entered into an agreement with the FBI herself, whereby she began recording her conversations with Manning. These conversations took place by telephone and in person. Because Manning was in jail, Herrera initiated the personal visits by traveling to Cook County Jail. By using Herrera and her boyfriend as informants, the government exploited its opportunity to interrogate Manning in the absence of counsel. Any statements from these informants related to Manning's charged crimes should not have been admitted at trial.

The government contends that even if it was error to admit Herrera's statements at trial, Manning did not properly preserve this claim. The record indicates that Manning's trial counsel attempted to exclude Herrera's testimony by way of a motion in limine, but failed to renew the objection when Herrera's testimony was admitted at trial.

A motion in limine standing alone does not normally preserve an issue for appellate review. United States v. Lee, 274 F.3d 485, 493 (8th Cir. 2001). However, when an issue has been defaulted by trial counsel, the defendant may overcome this

procedural bar by showing cause for the default and resulting prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Cause, in this respect, can include a showing of ineffective assistance of counsel. Id. at 753-54. Accordingly, we apply the familiar test of Strickland v. Washington, 466 U.S. 668 (1984), in order to determine if the performance of Manning's trial attorney was inadequate, and whether Manning was prejudiced by counsel's shortcomings.

Here, there can be no doubt that the performance of Manning's counsel was deficient. Counsel attempted to attack the admission of Herrera's testimony only through a motion in limine.[5] The lack of a contemporaneous objection at trial allowed the government to proffer Herrera's testimony unfettered, despite being constitutionally inadmissible.

The record in this case also establishes that Manning was prejudiced by his trial attorney's performance. As a result of counsel's failure to object to Herrera's testimony, the government adduced evidence that Manning had attempted to create a false alibi defense. The prosecutor recognized the importance of this point in his closing, where he emphasized "[i]nnocent people don't need to fabricate alibis." (Trial tr. at 657.)

Manning has established cause for his procedural default because his trial counsel was ineffective. As for resulting prejudice, as discussed above, counsel here allowed the jury to hear damaging, inadmissible testimony from Herrera that Manning wanted to fabricate an alibi. Because there is a substantial likelihood that absent this

---

[5] Manning now asserts that part of trial counsel's deficiency rests in the fact that he filed a motion in limine, where the more appropriate procedure would have been to file a suppression motion. Because we find that trial counsel was ineffective for not objecting to Herrera's testimony at trial, we need not address whether trial counsel's choice of pretrial motion was constitutionally deficient.

testimony the trial result would have been different, Manning has shown prejudice resulting from the procedural default.

The government's use of informants here violated Manning's constitutional right to counsel. As a result, Herrera's trial testimony should have been suppressed. Manning is not procedurally barred from raising this claim because he has shown sufficient cause for the default and resulting prejudice. Accordingly, the district court erred in not granting Manning relief on this ground.

III.    THE GOVERNMENT'S PRETRIAL IDENTIFICATION TACTICS

Manning argues that Carolyn Heldebrand's in-court identification was the product of an unduly suggestive pretrial identification procedure. In order to determine if identification testimony is admissible, the trial court must first determine if the pretrial identification technique was impermissibly suggestive. Manson v. Brathwaite, 432 U.S. 98, 110 (1977). "If so, then the court must decide whether, under the totality of the circumstances, the suggestive confrontation created a substantial likelihood of irreparable misidentification." Griffin v. Delo, 33 F.3d 895, 908 (8th Cir. 1994).

In 1990, Heldebrand was shown a photo spread of six people, one of whom was Manning. She pointed to Manning as looking similar to the person who picked up the ransom money from her, but said the person she saw had lighter hair. She was then shown four individual pictures of people, including one of Manning. In this picture, Manning had lighter hair. Manning claims the government's method here was unduly suggestive because his picture was the only one common to both photo spreads.

Although Manning may be correct on this point, the photo spread nonetheless did not create "a substantial likelihood of irreparable misidentification." Id. In fact,

Heldebrand was unable to identify Manning at her deposition, nor was she able to identify him at the first trial. It was not until the second trial that she identified Manning as the assailant. As such, Manning can hardly argue that the suggestive photo line-up forever etched his image as the assailant in Heldebrand's mind. Heldebrand's in-court identification at the second trial was the more likely the product of her seeing Manning as the defendant time and again throughout these extended criminal proceedings. Manning is not entitled to relief on this ground.

IV.    THE DELAY BETWEEN THE CRIME AND FORMAL CHARGES

Manning next claims that the delay between the time of the crime and the initiation of criminal proceedings against him was so long that he was deprived of due process. To prevail on a claim that delay in charging violated his due process, Manning must show that his defense has been substantially prejudiced by an unreasonable delay. Bennett v. Lockhart, 39 F.3d 848, 851 (8th Cir. 1994). To succeed on this claim, Manning must establish "actual prejudice," by identifying with specificity the evidence lost during the delay. Id. If Manning can show actual prejudice from the delay, the burden shifts to the state to show that the delay was not unreasonable. Id. A delay is not unreasonable if it is the result of a legitimate purpose, such as investigation. Id.

Manning was prejudiced by the delay. In the six and a half year delay between the crime and the filing of charges, three potential witnesses died. Two of these witnesses were also suspects in the kidnapping, while the third was a government informant. Certainly, Manning would have been better prepared had these witnesses been available for questioning. Most notably, Manning would have been apprised of the evidence against him, as well as the deficiencies in the state's witnesses. The presentation of Manning's case was hindered by not having these witnesses available.

Nonetheless, Manning is not entitled to relief on this claim. The delay between the crime and the charges was based on investigation. Following the crime, neither victim talked for several months. When they did, they were not able to identify any assailants because both victims were blindfolded throughout the ordeal. There were no further breaks in the case until Mammolito gave a statement in 1989. Following Mammolito's statement, investigation continued, and charges were ultimately brought in July of 1990. Because delay based on further investigation is reasonable, no due process violation occurred.

## CONCLUSION

Manning's due process rights were not violated by the lengthy precharging delay, nor by the government's pretrial identification procedures. However, the government's use of informants violated Manning's constitutional right to counsel and consequently, Sylvia Herrera's testimony should have been excluded at trial. Accordingly, we reverse the district court as to the right to counsel claim and remand with instructions to conditionally grant the writ, subject to the right of Missouri to retry Manning.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.