# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2859

_____

| | | |
|---|---|---|
| Joseph Nicholas Beck, Jr., | * | |
| | * | |
| Petitioner - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Michael Bowersox, | * | |
| | * | |
| Respondent - Appellee. | * | |

_____

Submitted:  September 11, 2003

Filed:  March 23, 2004

_____

Before LOKEN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

_____

LOKEN, Chief Judge.

Julie Parton's grandparents were murdered at their Missouri home on August 27, 1981.  Parton and her boyfriend, Joseph Nicholas Beck, hid the bodies and fled to Florida.  After a Missouri arrest warrant issued, Beck was arrested in Miami on September 5.  At the Miami airport, Beck waived his Miranda rights and gave both oral and written statements, asserting that he acted in self-defense.  On September 8, while being flown back to St. Louis, Beck again waived his Miranda rights and made additional, more incriminating statements.  Both sets of statements were admitted at his 1982 trial.  Beck was convicted of two counts of capital murder.  On direct appeal,

the Missouri Court of Appeals reversed the conviction, concluding that the statements should have been suppressed because the questioning violated Beck's Fifth and Sixth Amendment rights. The State appealed, and the Supreme Court of Missouri affirmed the trial court, concluding that no constitutional violation had occurred. State v. Beck, 687 S.W.2d 155, 160 (Mo. banc 1985), cert. denied, 476 U.S. 1140 (1986).

Beck filed this petition for federal habeas corpus relief in 1997. The district court dismissed the petition without a hearing. We reversed and remanded because the record before the district court did not include a transcript of the state court suppression hearing that had been part of the record before the state courts. Beck v. Bowersox, 257 F.3d 900 (8th Cir. 2001). On remand, the district court[1] reviewed the suppression hearing transcript, concluded that it supported the trial court's findings of fact regarding the voluntariness of Beck's statements, and again dismissed the habeas petition. Beck appeals,[2] arguing that admission of the statements violated his constitutional rights because his Miranda waivers were not knowing and voluntary, and because his Sixth Amendment right to counsel had attached before the statements were solicited. We affirm.

---

[1]The HONORABLE TERRY I. ADELMAN, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was assigned with the consent of the parties. See 28 U.S.C. § 636(c).

[2]We reject respondent's contention that we lack jurisdiction because the appeal was untimely. Beck's "Objection" to the district court's dismissal order must be treated as a motion under Federal Rule of Civil Procedure 59(e). See Quartana v. Utterback, 789 F.2d 1297, 1300 (8th Cir. 1986). That motion was timely filed within ten days of the district court's order under the prison mailbox rule, which applies to Rule 59(e) motions. See United States v. Duke, 50 F.3d 571, 575 (8th Cir.), cert. denied, 516 U.S. 885 (1995). Thus, the motion tolled the time for filing this appeal, and Beck's notice of appeal was timely. See FED. R. APP. P. 4(a)(4)(A)(iv).

# I. Background

We will summarize the relevant facts as found by the state courts. Like the district court, after careful review of the suppression hearing and trial transcripts, we conclude that Beck has failed to rebut by clear and convincing evidence the presumption of correctness that we must give to the state courts' determination of factual issues. See 28 U.S.C. § 2254(e)(1).

Three days after the murders, Beck asked his mother to find a lawyer for him. His mother asked Christine Hendrix, an assistant public defender who was representing Beck on unrelated charges, to represent him as a suspect in these murders. Hendrix agreed and then called the St. Charles County sheriff to advise him that she was Beck's attorney and to insist that she be notified prior to questioning if Beck was apprehended. One or two days later, an assistant prosecuting attorney applied for an arrest warrant, submitting an affidavit containing the following:

## COUNT I

The Prosecuting Attorney of the County of St. Charles, State of Missouri, charges that the defendant, JOSEPH NICKOLAS BECK, in violation of Section 565.001 RSMo, committed the felony of capital murder . . . in that the defendant wilfully, knowingly, with premeditation, deliberately and unlawfully killed Herbert Kemp by shooting him on or about the 27th day of August, 1981 . . . .

## COUNT II

The Prosecuting Attorney of the County of St. Charles, State of Missouri, charges that the defendant, JOSEPH NICKOLAS BECK, in violation of Section 565.001 RSMo, committed the felony of capital murder . . . in that the defendant wilfully, knowingly, with premeditation, deliberately and unlawfully killed Georginia Kemp by shooting her on or about the 27th day of August, 1981 . . . .

Based upon this affidavit, a St. Charles County Circuit Court judge issued a warrant to arrest Beck. The warrant stated that Beck "is charged with CAPITAL MURDER – TWO COUNTS" and then quoted the charges as set forth in the prosecutor's affidavit. On the same day, Hendrix left a message for the St. Charles County jailer requesting that she be notified if Beck was brought to the jail. Hendrix also informed the prosecutor that she was representing Beck and requested that she be notified before he was questioned.

The St. Charles County sheriff learned of Beck's arrest on September 5 but did not notify attorney Hendrix because the prosecutor advised the sheriff that he had no obligation to do so. Attorney Hendrix first learned of Beck's arrest on September 8, when he was being returned to St. Louis. Thus, Hendrix had no opportunity to advise Beck before he made incriminating statements at the Miami airport and during his plane ride back to Missouri.

Beck appeared before the St. Charles County Circuit Court on September 18. The court found sufficient evidence to bind him over on two counts of capital murder. The prosecutor filed an information on September 29 charging Beck with the same two counts of capital murder. After Beck's motion to suppress the September 5 and September 8 statements was denied, the statements were introduced at his 1982 trial. Beck's timely objections were preserved on direct appeal.

## II.  The Miranda Issue

In Miranda v. Arizona, 384 U.S. 436, 467-70 (1966), the Supreme Court held that, prior to initiating a custodial interrogation, the police must protect a suspect's Fifth Amendment privilege against self-incrimination by warning him that the State intends to use any statements to secure a conviction and that he has the right to remain silent and to have counsel present if he so desires. Once advised of those rights, the suspect may waive them, "provided the waiver is made voluntarily,

knowingly and intelligently." Miranda, 384 U.S. at 444; see Moran v. Burbine, 475 U.S. 412, 422-23 (1986).

At the suppression hearing, the officer who questioned Beck at the Miami airport testified that, before starting to question, he gave Beck a copy of a Miranda "rights card," confirmed that Beck could read and write, and then read each right from the card, asking Beck if he understood each right after it was read. Beck responded affirmatively, initialed each line on the card, and said he would make a statement. He did not request the presence of an attorney at any point during the interrogation. On the plane trip back to St. Louis, Beck was again advised of his Miranda rights and again chose to make incriminating statements before seeking advice from an attorney. Though Beck testified that he was coerced on both occasions, the state trial court "believe[d] the testimony of the police officers over the testimony of defendant" and found that the statements "were made freely and voluntarily on [Beck's] part after a knowing and intelligent waiver of his Constitutional rights."

Beck argued to the state courts that he did not knowingly and intelligently waive his Miranda rights because the police failed to advise him that he was being represented by a Missouri attorney who had asked the authorities not to question Beck before she met with him. By not honoring counsel's request, Beck argued, the St. Charles County sheriff and prosecutor were guilty of official misconduct that deceived Beck into making an unknowing waiver of his constitutional rights. The Supreme Court of Missouri rejected this argument, concluding that the sheriff had no legal duty to notify counsel before Beck was questioned, and that counsel's request "was legally insufficient to invoke [Beck's] Fifth Amendment rights." 687 N.W.2d at 158 n.7. The Court held that Beck's Miranda waiver was knowing and intelligent, observing, "It is simply incredulous to think that at the time of his arrest, defendant had forgotten that just a few days earlier he had specifically requested his mother to find him a lawyer." 687 S.W.2d at 159.

-5-

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may not grant a writ of habeas corpus unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000); see King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001) (en banc), cert. denied, 535 U.S. 934 (2002).

In this case, the Supreme Court's 1986 decision in Moran confirms that the Supreme Court of Missouri's decision not to suppress the statements in question was a reasonable application of Miranda. In Moran, a suspect arrested for breaking and entering was questioned about a previously unsolved murder. Moran waived his Miranda rights and confessed to the murder, unaware that his sister had obtained an attorney to represent him on the breaking and entering charge, and that the police had told this attorney that Moran would not be questioned that night. 475 U.S. at 416-18. The Supreme Court held that the Miranda waiver was valid despite the misinformation given to the attorney, and despite the failure of the police to inform Moran of the attorney's attempt to reach him. 475 U.S. at 423-24. Noting "overriding practical considerations," the Court declined "to adopt a rule requiring that the police inform a suspect of an attorney's efforts to reach him" before obtaining an otherwise knowing and voluntary waiver of Miranda rights. 475 U.S. at 425.

Beck attempts to distinguish this case from Moran on the ground that he had asked his mother to retain counsel to represent him prior to his arrest. However, the decision in Moran did not turn on the presence or absence of an attorney-client relationship. Rather, the Supreme Court ruled more broadly that an attorney's attempt to reach a suspect is not relevant to the validity of a Miranda waiver if the suspect is unaware of the attorney's efforts:

-6-

> Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

475 U.S. at 422-23. In this case, the Supreme Court of Missouri concluded that Beck validly waived his <u>Miranda</u> rights, based upon well-supported findings that he fully understood his right to remain silent, to consult with counsel, and to have his lawyer present when being questioned by police. <u>Moran</u> makes clear that this state court decision was neither contrary to nor an unreasonable application of clearly established federal law, as determined by the Supreme Court. <u>See</u> <u>Matney v. Armontrout</u>, 956 F.2d 824, 826 (8th Cir. 1992).

### III.  The Sixth Amendment Issue

Beck alternatively argues that he is entitled to federal habeas relief because the statements were taken in violation of his Sixth Amendment right to "the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." <u>Maine v. Moulton</u>, 474 U.S. 159, 176 (1985). Accordingly, "once this right to counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective." <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991). Beck argues that his right to counsel attached when the prosecuting attorney filed a warrant affidavit reciting that he was "charged" with two counts of capital murder. We disagree.[3]

---

[3]Beck further argues that his right to counsel was "invoked" when attorney Hendrix notified the St. Charles County authorities that she was representing him and wanted to be notified when he was apprehended. We doubt whether that was sufficient to invoke the Sixth Amendment right to counsel. <u>See</u> <u>Chewning v. Rogerson</u>, 29 F.3d 418, 422 (8th Cir. 1994). But we need not resolve this issue.

In general, the Sixth Amendment right to counsel attaches when the State initiates an adversary judicial proceeding "by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 (1972) (plurality opinion); accord United States v. Gouveia, 467 U.S. 180, 188 (1984). Beck argues that his Sixth Amendment right attached with the filing of the affidavit because the affidavit and the arrest warrant recited that he was "charged" with the murders of Herbert and Georgiana Kemp. The Supreme Court of Missouri rejected this argument, concluding that Beck's Sixth Amendment right to counsel did not attach when the prosecutor filed an affidavit for the sole purpose of obtaining a warrant to apprehend him in Florida, because that filing did not initiate an adversary judicial proceeding within the meaning of Kirby. The Court explained:

> At the time [Beck's] statements were made, the only document that had been filed was an affidavit sworn out by the prosecuting attorney -- for the sole purpose of securing an arrest warrant with which to apprehend [Beck] who was over one-thousand miles away in Florida. [Beck] would have us color this ex parte event as the initiation of adversary judicial proceedings sufficient to trigger his Sixth Amendment right to counsel. In *Morris v. State*, 532 S.W.2d 455 (Mo. banc 1976), this Court, citing *Kirby* with approval, determined that the issuance of an arrest warrant did not amount to the initiation of adversary judicial proceedings -- as defined within the framework of *Kirby* . . . .
>
> . . . [Beck] was the subject of an arrest warrant -- and not the subject of a formal charge in the nature of an indictment or information.

Beck, 687 S.W.2d at 160. Under Missouri law, "[a] prosecution is commenced either when an indictment is found or an information filed." MO. ANN. STAT. § 556.036.5. On January 1, 1980, after the decision in Morris v. State, Missouri Supreme Court Rule 22 was amended to clarify that an arrest warrant may issue upon the filing of a complaint by the prosecuting attorney and a finding of probable cause by the court. MO. SUP. CT. R. 22.01-22.03; see State v. Thomas, 674 S.W.2d 131, 135 (Mo. App.

1984) ("The filing of a complaint is the first step in the information proceeding."), cert. denied, 469 U.S. 1223 (1985). But the Supreme Court of Missouri in Beck did not construe that rule change as affecting its decision in Morris "that the issuance of an arrest warrant did not amount to the initiation of adversary judicial proceedings." Beck, 687 S.W.2d at 160.

The Sixth Amendment right to counsel attaches at a preliminary hearing or arraignment. See Brewer v. Williams, 430 U.S. 387, 399 (1977); Coleman v. Alabama, 399 U.S. 1, 10 (1970). But the Supreme Court has declined to hold that the right attaches at the time of an arrest. See Gouveia, 467 U.S. at 190; accord Moran, 475 U.S. at 428-32. Applying these decisions, this court and other circuits have repeatedly held that the right does not attach with an arrest, even an arrest preceded by the filing of a complaint under Rule 3 of the Federal Rules of Criminal Procedure.[4] The prosecutor's affidavit in this case, like a federal Rule 3 complaint, was filed solely to obtain a warrant for Beck's arrest. Because the affidavit and the arrest warrant preceded Beck's arrest, and his Sixth Amendment right to counsel did not attach at the time of the arrest, the Supreme Court of Missouri's conclusion that the right did not attach upon the filing of the affidavit was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

The Supreme Court issued its decision in Gouveia less than a year before the Supreme Court of Missouri's decision in Beck. Since Gouveia, the Supreme Court

---

[4]See Von Kahl v. United States, 242 F.3d 783, 789 (8th Cir.) ("The filing of a criminal complaint and the issuance of an arrest warrant do not constitute the initiation of an adverse judicial proceeding for purposes of *McNeil*."), cert. denied, 534 U.S. 941 (2001); United States v. Moore, 122 F.3d 1154, 1156 (8th Cir. 1997), cert. denied, 522 U.S. 1135 (1998); United States v. Langley, 848 F.2d 152, 153 (11th Cir.), cert. denied, 488 U.S. 897 (1988); United States v. Pace, 833 F.2d 1307, 1312 (9th Cir. 1987), cert. denied, 486 U.S. 1011 (1988); Lomax v. Alabama, 629 F.2d 413, 416 (5th Cir. 1980), cert. denied, 450 U.S. 1002 (1981); United States v. Duvall, 537 F.2d 15, 21-22 (2d Cir.) (Friendly, J.), cert. denied, 426 U.S. 950 (1976).

has given further indication that the Sixth Amendment right to counsel does not attach at the complaint/arrest or warrant/arrest stage of a typical felony investigation. In McNeil, for example, the Court refused to expand the pretrial Sixth Amendment right to counsel so as to override a suspect's valid Miranda waivers, explaining:

> Admissions of guilt resulting from valid *Miranda* waivers "are more than merely 'desirable'; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law."

501 U.S. at 181, quoting Moran, 475 U.S. at 426. That passage from Moran was again quoted in Texas v. Cobb, 532 U.S. 162, 172 (2001), a decision declining to expand the Sixth Amendment exclusionary rule in which three Justices commented that "it is difficult to understand the utility of a Sixth Amendment rule that operates to invalidate a confession given by the free choice of suspects who have received proper advice of their *Miranda* rights but waived them nonetheless." 532 U.S. at 174-75 (Kennedy, J., concurring). In our view, these later decisions confirm that the Supreme Court of Missouri's decision that Beck's Sixth Amendment right to counsel had not attached when he waived his Miranda rights and made the statements in question was neither "contrary to [nor] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

For the foregoing reasons, the judgment of the district court is affirmed.

HEANEY, CIRCUIT JUDGE, dissenting.

Joseph Beck gave two incriminating statements that were undoubtedly central to his conviction. The government elicited each of those statements after Beck's constitutional right to counsel attached, and thus they should not have been admitted at his trial. I respectfully dissent from that portion of the majority's opinion which

finds no error in the admission of these statements. I would grant Beck's petition for a writ of habeas corpus, permitting the state to retry him without use of the unconstitutionally-obtained statements.

## BACKGROUND

In August of 1981, Julie Parton and her young son lived at the home of her grandparents, Herbert and Georgianna Kemp. Parton was Joseph Beck's girlfriend, and Beck was the father of Parton's child. Beck's relationship with Parton caused tension between Parton and her grandparents. Eventually, Beck and Parton decided to kill her grandparents and on August 27, 1981, they carried out the plan. Shortly thereafter, Beck and Parton left town.

At the time of the killing, Beck was represented by a public defender, Christine Miller Hendrix, on unrelated felony charges. On August 30, 1981, Beck's mother contacted Hendrix, and informed her that Beck had asked for a lawyer because he was a suspect in the Kemp murders. Hendrix agreed to represent Beck in connection with the murders.

A number of relevant events occurred on September 1, 1981. Hendrix called St. Charles County Sheriff Edward Uebinger and informed him that she represented Beck.[5] She gave Uebinger her home telephone number, and insisted that she be contacted if Beck was apprehended before any questioning took place. Hendrix also called the St. Charles County Jail and left a message for Dean Stephens, the head of the facility, stating she wanted to be notified if Beck was brought to the jail. St. Charles Prosecuting Attorney Donald Kohl conferred with Sheriff Uebinger. He

---

[5]This conversation was recorded and transcribed in the Missouri Supreme Court's decision relating to Beck's direct appeal. See State v. Beck, 687 S.W.2d 155, 157 n.4 (Mo. banc 1985).

advised that Uebinger did not have to call Hendrix if Beck was arrested, despite Uebinger's understanding that Beck was represented by counsel. Meanwhile, in an ex parte proceeding, Prosecuting Attorney Kohl filed a document in support of an arrest warrant. The document read as follows:

AFFIDAVIT

| | |
|---|---|
| STATE OF MISSOURI | ) |
| | ) ss.  CAPITAL MURDER - |
| | )       TWO COUNTS |
| COUNTY OF ST. CHARLES | ) |

IN THE CIRCUIT COURT
OF ST. CHARLES COUNTY, MISSOURI
ASSOCIATE JUDGE DIVISION

| | |
|---|---|
| STATE OF MISSOURI | ) |
| | ) |
| against | ) |
| | ) |
| JOSEPH NICKOLAS BECK | ) |

## COUNT I

The prosecuting Attorney of the County of St. Charles, State of Missouri, charges that the defendant, JOSEPH NICKOLAS BECK, in violation of section 565.001 RSMo, committed the felony of capital murder, punishable upon conviction under Sections 565.008.1, 565.006, 565.012 RSMo, in that the defendant wilfully, knowingly, with premeditation, deliberately and unlawfully killed Herbert Kemp by shooting him on or about the 27th day of August, 1981, in the County of St. Charles, State of Missouri, thereby causing him to die on or about the 27th day of August, 1981, in the County of St. Charles, State of Missouri.

## COUNT II

The Prosecuting Attorney of the County of St. Charles, State of Missouri, charges that the defendant, JOSEPH NICKOLAS BECK, in violation of Section 565.001 RSMo, committed the felony of capital murder, punishable upon conviction under Sections 565.008.1, 565.006, 565.012 RSMo, in that the Defendant wilfully, knowingly, with premeditation, deliberately and unlawfully killed Georginia [sic] Kemp by shooting her on or about the 27th day of August, 1981, in the County of St. Charles, State of Missouri, thereby causing her to die on or about the 27th day of August, 1981, in the County of St. Charles, State of Missouri.

/s/_____
Prosecuting Attorney of the County of
St. Charles, State of Missouri, by

/s/_____
Donald L. Kohl
Assistant Prosecuting Attorney
Missouri Bar No. 28062

An arrest warrant was issued based on this document.

On September 3, 1981, Hendrix saw Prosecuting Attorney Kohl in a judge's chambers. She informed him that she represented Beck and told him to notify her if Beck was arrested, prior to any interrogation. Kohl did not tell her that he had filed the document in support of the arrest warrant and that an arrest warrant subsequently issued, nor did he tell her about his advice to Sheriff Uebinger.

At some point, Sheriff Uebinger received information that Beck was traveling to the Miami, Florida airport. On September 4, 1981, he dispatched two of his deputies to apprehend Beck, but did not tell them that Beck was represented by Hendrix. Florida authorities arrested Beck a day later at the Miami International Airport. He was then questioned by the two St. Charles County officers. Sheriff

Uebinger was notified of Beck's arrest, but did not pass on this information to Hendrix.

On September 8, 1981, Hendrix called Sheriff Uebinger after learning from newspaper reports that Beck had been arrested. Despite the fact that Uebinger's deputies had already interrogated Beck, Uebinger again assured Hendrix that she would be contacted before Beck was questioned. Hendrix did not talk to Beck until late in the evening on September 8, 1981. By that time, he had given several incriminating statements: one shortly after his arrest on September 5, 1981, and another on September 8, 1981, during the flight back to Missouri.[6]

A preliminary hearing on Beck's murder charges was held on September 18, 1981. On September 29, 1981, he was formally charged with the Kemp murders by an information. Prior to trial, Beck moved to suppress the statements he gave on September 5th and September 8th, but was unsuccessful. He was tried and convicted of both killings.

The Missouri Court of Appeals, in an unpublished decision, reversed Beck's conviction. The court found that Beck's right to an attorney attached on September 1, 1981, the date the prosecutor filed the document in support of Beck's arrest warrant.

---

[6]Beck actually gave a third incriminating statement once brought to the jail in Missouri, but this statement was suppressed and not used at trial. Nonetheless, the facts surrounding that statement are illustrative of the government's conduct in this case: Beck was brought to the St. Charles County jail around 9:00 p.m. on September 8, 1981. Shortly thereafter, Beck was again interrogated. Hendrix did not arrive at the jail until 9:30 p.m., and she was not allowed to see Beck pursuant to the order of Prosecuting Attorney Kohl. Hendrix then sought out a circuit court judge to resolve the matter, after which Hendrix was finally allowed access to her client at about 11:00 p.m. on the night of September 8, 1981. For the purposes of clarity, references in this dissent to the September 8, 1981 statement relate to the statement on that date that was not suppressed.

-14-

The state appealed, and the Missouri Supreme Court vacated the court of appeals decision and affirmed the conviction. State v. Beck, 687 S.W.2d 155 (Mo. banc 1985).

Beck then filed a petition for a writ of habeas corpus. The district court denied the petition without an evidentiary hearing or the benefit of the full state court record. We reversed and remanded with instructions to review the full record before rendering another decision. Beck v. Bowersox, 257 F.3d 900, 901 (8th Cir. 2001). After doing so, the district court again denied Beck's petition.

## ANALYSIS

Beck contends that the statements elicited from him on September 5th and September 8th without his lawyer present violated his Sixth Amendment right to counsel. At the time of Beck's statements, the only documents filed were an arrest warrant and the supporting document. The majority holds that because Beck was not formally charged by information at the time he gave his statements, no constitutional right to counsel had yet attached. To my mind, such a narrow and rigid view of the Sixth Amendment does not comport with the Supreme Court's decisions on the matter, nor those of our circuit.

Criminal defendants are guaranteed the right to counsel at all critical stages of criminal proceedings. Massiah v. United States, 377 U.S. 201, 205 (1964). The right attaches to "interrogation activities conducted 'at or after the initiation of adversary criminal proceedings–whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'" Gilmore v. Armontrout, 861 F.2d 1061, 1070 (8th Cir. 1988) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)).

The majority attempts to obfuscate the issue by citing cases which hold that no right to counsel attaches at the time of arrest or at the filing of a complaint under the

Federal Rules of Criminal Procedure. I agree that if only an arrest warrant were filed, Beck's argument would merit little discussion. See United States v. Gouveia, 467 U.S. 180, 190 (1984) ("[W]e have never held that the right to counsel attaches at the time of arrest."); United States v. Purham, 725 F.2d 450, 454 (8th Cir. 1984) ("An arrest for a crime with which the defendant is eventually charged does not initiate adversarial judicial proceedings."). I cannot agree, however, that the document filed in support of the arrest warrant was a mere formalism attendant to the arrest warrant. Rather, as the Missouri Court of Appeals recognized, the document operated as the initiation of adversarial proceedings against Beck, and thus triggered his right to counsel.

The arrest warrant issued on September 1, 1981, and was issued only after Prosecuting Attorney Kohl filed a document equivalent in every respect to a criminal complaint. See Mo. Sup. Ct. R. 22.02 (1981) (stating that a complaint must identify name of court, defendant, facts constituting the felony including date and place, and signature of prosecuting attorney) (current version at Mo. Sup. Ct. R. 22.02 and 22.03). Curiously, however, the majority holds that the issuance of the arrest warrant was not preceded by any event that initiated the criminal proceedings against Beck. This is inconsistent with Missouri's own rules of criminal procedure on the matter,[7] and disregards the plain language of the document, which clearly signaled the beginning of adversary criminal proceedings.

The document filed in support of the arrest warrant carefully recited the allegations against Beck and charged him with capital murder. It satisfied all the requirements of a complaint under Missouri law. After it was filed, an arrest warrant was issued for Beck. In accord with Missouri's own rules on the matter, I would hold

[7]Missouri's rules of criminal procedure permitted the issuance of felony arrest warrants after a criminal proceeding was initiated by the filing of a complaint or the return of an indictment. See Mo. Sup. Ct. R. 22.03 (1981) (current version at Mo. Sup. Ct. R. 22.04).

that the document filed by Prosecuting Attorney Kohl in support of the warrant operated as a complaint. Accord Mo. Sup. Ct. R. 22.03 (1981) (current version at Mo. Sup. Ct. R. 22.04). In fact, it was so treated by the state circuit court, which issued an arrest warrant based on this document.

My conclusion that the document was the equivalent of a complaint is further buttressed by a comparison of it to the information filed on September 29, 1981. The majority agrees that the right to counsel would attach following the filing of this information. It fails to recognize, though, that the information and the document filed by Prosecuting Attorney Kohl in this case are nearly identical, and contain precisely the same allegations, word for word. I agree with the Missouri Court of Appeals on this matter:

> Is the filing of a paper wherein a prosecutor under oath charges a defendant with violations of specific statutes any less a commitment to prosecution when labelled "Affidavit" rather than "Information"? Does the difference in title cause the defendant to be any less confronted with the prosecutorial forces of organized society or less deeply immersed in the intricacies of substantive and procedural criminal law? The frequently quoted indicia of the initiation of adversary judicial criminal proceedings as set forth in Kirby are "formal charge, preliminary hearing, indictment, information or arraignment." Were we to give an affirmative answer to the questions posited above, we would effectively strike the first of these indicia from the Supreme Court's definition.

State v. Beck, No. 46741, slip op. at 11 (Mo. Ct. App. Mar. 6, 1984).

I cannot agree that virtually the same document, filed in the same court, would trigger Beck's right to counsel when called an information, but not when called an affidavit. The title of the document is irrelevant; the key inquiry is whether the affidavit signaled that the state had "committed itself to prosecute." Kirby v. Illinois, 406 U.S. 682, 689 (1972) (plurality opinion); see also Smith v. Lockhart, 923 F.3d

-17-

1314, 1318-19 (8th Cir. 1991) (listing criminal stages at which right to counsel attaches); accord United States v. Red Bird, 287 F.3d 709, 715-16 (8th Cir. 2002) (holding right to counsel attached before filing of formal criminal complaint in federal court where tribal court proceedings had already begun and federal government operated in concert with tribal forces to investigate the allegations). The document filed by Prosecuting Attorney Kohl on September 1, 1981, was clearly a commitment to prosecute: It was sworn out by a prosecuting attorney; recited the allegations; charged an offense; and resulted in an arrest warrant for Beck. In fact, it was subsequently used as a template for the information filed on September 29, 1981.

Moreover, I have found no support in the record for the view that the "sole purpose" of the document was to "secure an arrest warrant" for Beck. Ante at 8 (quoting State v. Beck, 687 S.W.2d 155, 160 (Mo. banc 1985). If anything, the record reveals that even the state may have recognized that Prosecuting Attorney Kohl's document signaled the initiation of adversarial proceedings. At a hearing on Beck's motion to dismiss, Prosecuting Attorney Kohl admitted that one consideration in reaching an agreement to have Julie Parton testify against Beck was that Beck's statements may be ruled inadmissible. There is no doubt that this decision reflected the concern that Beck's statements had been elicited after his right to counsel attached.

In Manning v. Bowersox, 310 F.3d 571 (8th Cir. 2002), the petitioner argued his Sixth Amendment right to counsel had been violated by the government's use of an informant after he was charged by complaint in Missouri state court. The state argued that Manning did not have a constitutional right to counsel because he was charged by complaint rather than by indictment at the time of his statements. We dismissed this purported distinction, holding that "[t]he right to counsel attached to interrogations conducted after the initiation of adversarial criminal proceedings against the defendant; it is of no import whether the proceedings were initiated by

-18-

complaint or indictment." Id. at 575. Manning made clear that a Missouri defendant's right to counsel attaches following the filing of a complaint or its equivalent. Because Beck's case similarly involved Missouri law and procedure, I see no use in turning to those cases relied upon by the majority which consider the effect of filing of a complaint under the Federal Rules of Criminal Procedure.[8] See also Chewning v. Rogerson, 29 F.3d 418, 420 (8th Cir. 1994) (noting with approval the stipulation that the filing of a criminal complaint in Iowa state court triggered petitioner's Sixth Amendment right to counsel).

I am troubled by the majority's claim that recognizing Beck's right to counsel as I have suggested "might discourage the use of warrants in making arrests." Ante at 9. Perhaps this is a valid consideration, but it ignores the more serious concern associated with governmental manipulation of criminal proceedings. This case presents a telling example: Beck's attorney informed the sheriff, the jail, and the prosecuting attorney that she represented Beck well before he was apprehended. Nonetheless, the state purposefully disregarded her, and Beck's right to speak with her, in favor of securing a confession. Such directed and zealous prosecutorial work may be effective in securing convictions, but it simply cannot be tolerated under our Constitution. Today, the majority upholds such conduct under the guise that no formal charges had been filed against Beck, despite the obvious intent of the state to prosecute him as early as September 1, 1981. This will inevitably encourage the government to similarly exploit the criminal process to its benefit in the future, without any regard for the rights of the accused.

In short, the document filed by Prosecuting Attorney Kohl on September 1, 1981, in support of Beck's arrest warrant, operated as a complaint under Missouri law

---

[8]In contrast, I look to the clear statement from Missouri's own rules of criminal procedure, as adopted by the Missouri Supreme Court, that felony proceedings "may be initiated by complaint" or indictment. Mo. Sup. Ct. R. 22.01.

and signaled the initiation of adversarial criminal proceedings against Beck. Accordingly, the Constitution guaranteed Beck a right to counsel at the time he was interrogated on September 5th and September 8th, 1981. Because that right was violated, his statements should not have been admitted at trial.

## CONCLUSION

Due to the constitutional infirmity of Beck's conviction, I would reverse the district court and grant the petition for a writ of habeas corpus.

_____